(59 App. Div. 282.)

## PHELAN v. DOWNS et al.

(Supreme Court, Appellate Division, Third Department. March 8, 1901.)

PRINCIPAL AND AGENT—MISAPPROPRIATED FUNDS — RECOVERY—MORTGAGE—
FORECLOSURE.

At a sale of mortgaged land at foreclosure, the property was bid in by an agent, who paid part of the price with funds of his principal which he had misappropriated. The agent did not complete the purchase, and the court ordered a resale. The order did not make the first purchaser responsible for the deficiency, or declare a forfeiture of the amount paid by him, but directed that it be held by the referee who made the sale, subject to the order of the court. At the resale the property sold for less than was bid at the first sale. Held, that the principal could recover from the referee the money so misappropriated by its agent, as by the order of resale the first purchaser was released from all liability on account of his bid, and neither the referee nor any one interested in the land had any interest in the money as against the true owner.

Appeal from special term, Albany county.

Action by John J. Phelan, as receiver of the American Fur Company, against J. Murray Downs and others. From a judgment for plaintiff (64 N. Y. Supp. 737), defendants appeal. Affirmed.

The plaintiff seeks to recover the sum of $6,000, now in the custody of the court under the following circumstances: Certain premises in the city of Albany were incumbered by a mortgage to secure $20,000. The defendant the First National Bank of Albany held a judgment which was a subsequent lien upon such premises. The American Fur Company acquired the title to such premises, subject to such liens. On January 4, 1897, the premises were sold on execution issued on the bank's judgment and bid off by such bank. On January 20, 1897, a judgment foreclosing the said mortgage and ordering a sale of the premises was entered, whereby the defendant Downs was appointed a referee to make the sale. On February 11, 1897, Downs, as such referee, offered the premises at public sale, and the defendant Gillig bid the sum of $40,000 therefor. They were struck off to him at that figure, and in accordance with certain terms of sale then and there signed he paid to the referee 15 per cent. of such bid, viz. $6,000, by a check for that amount, drawn on the National Exchange Bank, to the order of the referee, and certified as good by its cashier. The referee indorsed such check "for deposit only," and it was placed to his credit in the First National Bank of Albany. By the terms of sale Gillig was to pay the balance of his bid by February 15th, and it was therein further provided: "Sixth. The biddings will be kept open after the property is struck down, and in case any purchaser shall fail to comply with any of the above conditions of sale, the premises so struck down to him will be again put up for sale, under the direction of said referee, under these same terms of sale, without application to the court, unless the plaintiff's attorneys shall elect to make such application, and such purchaser will be held liable for any deficiency there may be between the sum for which said premises shall be struck down upon the sale and that for which they may be purchased on the resale, and also any costs or expenses occurring on such resale." Gillig refused to complete his purchase, and on May 22, 1897, an order of court was made directing Gillig to complete his purchase, and, in the event that he failed to do so, directing that a resale be had, and that the $6,000 be retained by the referee, subject to the further order of the court. A resale was had on June 28th, and the premises were struck off to one Keeler for the sum of $28,850, who paid the money and took a conveyance from the referee. The referee applied a sufficient amount thereof to satisfy the mortgage debt and costs, and reported that he had a balance of $5,997.12 in his hands as surplus moneys arising on the sale, which was paid to the county treasurer. He also reported that he still held the $6,000, and asked instructions regarding the same. On July 14th an order was made confirming his report and directing him to hold such $6,000 until further order. This action

was subsequently commenced by the plaintiff, as receiver of the fur company, to recover such amount, on the ground that Gillig, being an officer of the fur company, had unlawfully abstracted it from the funds of that company. The defending bank claims that, being the owner of the equity of redemption in the mortgaged premises, it is entitled to such fund. A judgment of the special term was rendered in the plaintiff's favor, and from such judgment this appeal is brought.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

Bailey & Dugan (J. Newton Fiero, of counsel), for appellants.
Nusbaum & Coughlin (Lewis E. Carr, of counsel), for respondent.

PARKER, P. J. It must be conceded that the $6,000 in question comes from the bank account of the American Fur Company. The check given to the referee was paid from that account, and it was so authenticated by the president that such payment could not have been subsequently repudiated on the part of that company. On the record we must further concede that Gillig made such purchase in his own name and for his own benefit, and hence the money was used by him in his own personal venture. Neither the president nor the other officers acting in the matter could lawfully authorize him so to do. Therefore his use of the check was an unlawful appropriation of the company's funds to his own use. But, if we assume that he was in reality purchasing the property for the benefit of the company, and with the purpose of transferring the title to the company when it was conveyed to him, nevertheless it was a misappropriation of the company's funds. Such officers had no right to make such a contract or investment for the company, and no authority to use its funds for such purpose. Therefore the $6,000 which went into the referee's hands, and which he still holds, was and is a fund which has been unlawfully withdrawn by its officers and agents from the bank account of the fur company for a purpose to which they had no right to apply it. If this fund was still in Gillig's hands, there would be no question but that he could be compelled to restore it to the owner. Has any one in the course of the transaction acquired such a right to it, or such an equity in it, as to prevent the court from now directing such restoration?

It is well settled that where a fund so misappropriated has been kept intact and can be identified, it may be recovered by the owner, as against any one except bona fide holders for value. Sugar-Refining Co. v. Fancher, 145 N. Y. 552, 556, 557, 40 N. E. 206, 27 L. R. A. 757; Roca v. Byrne, 145 N. Y. 182, 39 N. E. 812; Turnpike-Road Co. v. Paviour, 164 N. Y. 281, 58 N. E. 114. The referee, Downs, makes no claim to the fund, except as an officer of the court. He personally parted with no value for it, and still holds it subject to the order of the court. The defending bank, as the mere depositary of the referee, makes no claim to it. As between them, it concededly holds it subject to his order. But it is claimed by such bank that the referee in his official capacity became a bona fide holder for value of such fund; that, therefore, the same cannot be reclaimed from him; that, being so held by the referee, as against the fur company, it is a part of the

purchase money received on the sale of the mortgaged premises, and should be distributed to it as the owner of the equity of redemption. So the question is presented whether the referee—or the court, rather, for the referee but represents the court—acquired and still holds this fund under circumstances that make it a bona fide holder for value.

It is argued that it was a sum received in good faith by the referee upon an indebtedness due from Gillig to him, which had been created by Gillig's bid of $40,000. Suppose it to be precisely that. The object of the foreclosure proceedings was to sell the mortgaged premises and apply the proceeds to the mortgage debt, and to distribute the surplus among those entitled thereto; and it was the duty of the referee, acting for the court, to procure upon the sale all that the premises would fairly bring. If Gillig had paid up the balance of his bid, and the premises had been conveyed to him, it might be claimed that the court held the $6,000 as a part of the purchase price, and, having received it in good faith, was equitably bound to hold it to the use of those interested in the mortgaged premises. But when Gillig refuses to pay the balance of his bid, and it appears that the amount which he did pay was not his money, but belonged to his principal, from whom he had unlawfully converted it, was it not the duty of the court to disregard his bid and resort to a resale of the premises, rather than to insist on the steal for the benefit of these defendants? Such is substantially the situation here. Gillig makes default, abandons his bid. The court, instead of insisting upon his performing it, and enforcing its mandate by proceedings for contempt, orders a resale. Such order does not declare the $6,000 forfeited, nor, as I understand it, does it require Gillig to pay any deficiency that may arise upon the resale. It does, however, direct the $6,000 to be retained by the referee, subject to the further order of the court. Whether or not the court had then discovered Gillig's fraud does not appear. But that does not affect the situation. It is clear that, under the proceedings which it took, it did not receive and apply the $6,000 upon the purchase price for which the premises were sold and conveyed by the referee. If it is to hold the $6,000 at all, it holds it as a forfeiture, and not in consideration of premises conveyed. In my opinion, under such circumstances, no such equity accrued to those interested in the premises as requires the court, now that the real ownership of the fund appears, to insist that it acquired it for value and in good faith.

But the precise condition claimed by the defendant does not exist. There was no contract of purchase and sale between Gillig and the referee. Gillig made an offer for the premises, which the court, on its part, in the exercise of its discretion, might accept or reject. Camden v. Mayhew, 129 U. S. 73, 9 Sup. Ct. 246, 32 L. Ed. 608; Fisher v. Hersey, 78 N. Y. 387, 388. The sole liability on Gillig's part was to comply with the terms of sale under which he bid. Those terms did not provide for any forfeiture. They did provide for a resale without order of court, or for a sale, at the option of the plaintiff, upon a new order. What would have been Gillig's liability, had they been resold without order, we need not determine. They were, in fact, sold upon a new order, which neither forfeited the $6,000 nor

made Gillig responsible for the deficiency. Under such circumstances, within the authority of the following cases, Gillig could himself reclaim the $6,000. He would not forfeit the amount, because the terms of sale did not so provide. Miller v. Collyer, 36 Barb. 250. It could not be applied upon any deficiency, because the resale was not had under an order that made him liable for the deficiency. As is said in Goodwin v. Simonson, 74 N. Y. 133, 136:

"As the court granted a resale, the purchaser was discharged from liability to make good the deficiency arising on the last sale by the order of the court."

See, also, Insurance Co. v. Jones, 45 How. Prac. 498; Leslie v. Goodhue, 69 Hun, 71, 23 N. Y. Supp. 389; Flint v. George (Sup.) 8 N. Y. Supp. 221; Ray v. Adams, 44 App. Div. 177, 60 N. Y. Supp. 663.

If Gillig could reclaim the amount from the referee, clearly the real owner may do so in this action, where Gillig is a party and makes no claim. This plaintiff, as receiver, may claim what the fur company could claim; and hence I conclude that the judgment restoring to him the fund in question was correct, and should be affirmed, with costs. All concur; SMITH, J., in result.