The Mariners Savings Bank *vs.* Giosue Duca et al.

* First Judicial District, Hartford, October Term, 1922.
Wheeler, C. J., Beach, Burpee, Keeler and Hinman, Js.

In general, a judicial sale requires confirmation by the court before it can become complete and create legal rights and obligations among the parties interested therein; and our statutes, §§ 5227, 5228, relating to foreclosure sales are in entire accord with this rule.

It is within the discretion of the committee appointed to make a foreclosure sale to require a deposit from the purchaser without any express order of court to that effect; but such committee, unless expressly authorized by the court, cannot declare a forfeiture of the deposit upon the bidder's failure to complete the purchase.

In the absence of an express provision in the judgment or terms of sale for a forfeiture of the deposit, it will not be implied.

* Transferred from second judicial district.

Mariners Savings Bank *v.* Duca.

Upon default by a purchaser at a judicial sale, the court, upon proper
    application, may either discharge the original sale and order a re-
    sale, or confirm the original sale, order the purchaser to complete
    payment, and hold him in contempt for noncompliance with the
    order; or it may confirm the sale and order a resale for the account
    of the purchaser, charging him with any deficiency arising out of
    the resale, and incidentally order the deposit, if any has been made,
    to be applied on account of such deficiency.

If the court does not confirm the first sale, but orders a resale without
    charging the first purchaser with any liability for a deficiency at
    the resale—the situation in the present case—such purchaser is
    discharged and is entitled to a return of his deposit.

Such purchaser is discharged in any event where the terms of the re-
    sale are more onerous than those of the first sale, as in the case
    where the order of resale, unlike the original order, contains a pro-
    vision for the forfeiture of his deposit by the purchaser on his de-
    fault.

Argued October 5th—decided November 27th, 1922.

APPLICATION to the Superior Court in New London
County praying for the return of $1,600 paid by the ap-
plicant as part of the purchase price of real estate which
he had bid in at its foreclosure sale, which he was after-
ward unable or unwilling to consummate; the court,
*Webb, J.,* heard the parties interested and granted
the application, and from this judgment the third
mortgagee, who purchased the property· at a later
foreclosure sale, appealed. *No error.*

Judgment of foreclosure by sale was rendered by the
court in this case on March 24th, 1922, and a com-
mittee appointed to make sale. · The judgment-file
followed substantially the form provided in the Practice
Book, with the usual provisions for advertisement,
return to the court by the committee of his doings,
and submission of the proposed deed and payment
of proceeds of sale into court. As directed by the judg-
ment, the committee sold the mortgaged real property
to one Serafin for the sum of $16,000, and received
from him a deposit of $1,600, required by the committee
as an initial payment, which last-named sum was by

the committee paid to the clerk of the court, and was held by the latter until the conclusion of the action and the making of the order of the court which is the subject-matter of the present appeal.    Due return was also made of the advertisement and of compliance with the other provisions of the judgment.    The report of the committee concludes as follows: "I make further return that I have notified said Opolonio Serafin that I was prepared to deliver to him, the said Opolonio Serafin, a deed under the order of said Superior Court, but that said Opolonio Serafin has failed and refuses to make the final payment for said premises.

"I, the said Thomas C. Dillon, as committee as aforesaid, am satisfied that said Opolonio Serafin will be unable to complete said sale."    This report and return was filed in court and accepted June 9th, 1922.

On the last-named day, upon the application of the plaintiff in the action, the court made an amendment and modification of the judgment of sale, reciting the inability of the committee to make sale under the original judgment and ordering a resale of the property by the committee on June 17th, 1922.    The amount of payment to be required by way of redemption, included the original debt, interest and costs as previously adjudged, and also the expense of the prior sale. Sale was made pursuant to the amended judgment to Tomasso DiMaggio, the appellant herein, for $11,500. The latter was a party defendant to the action by virtue of his holding a third mortgage upon the property in question.    Serafin, the appellee herein, was also a party to the action by virtue of holding a fourth mortgage on said property.

Return of sale was made by the committee on June 30th, 1922, and on the same day the return was accepted by the court and supplemental judgment rendered confirming the sale and distributing the proceeds.

After payment of expenses of sale and all prior claims, there was paid over to DiMaggio, on account of his third mortgage indebtedness, $262.72. The total due him on said mortgage was $4,466.56. The supplemental judgment concludes with the provision that the payments ordered therein "are to be paid without prejudice to the disposition under a petition now pending of the $1,600 paid by Opolonio Serafin to said committee and by said committee brought into this court."

The property described in the judgment of sale consisted of a lot of land in the town of New London. Connected with the description of the lot is a reservation of the use of a grape arbor by the grantor of the mortgagor; also a covenant for the erection by the grantee, his heirs and assigns, of a private residence in the middle of the property at a cost of not less than $12,000, to be not more than two and one half stories high, and "not to be constructed as a two tenement house, . . . but it is to be built and used as a single private residence, it being expressly agreed that the above is sold on these terms and conditions and would not be sold on any other terms." It was further stipulated in the deed that any garage erected on the property should not be used to store more than two cars. These covenants and restrictions were to continue in force as long as the grantor in the original deed resided on property adjoining the conveyed lot, or until the adjoining property should be sold.

Thereafter, on July 7th, 1922, Serafin, the appellee herein, preferred his petition to the court, asking that said sum of $1,600 be returned to him, setting forth in substance the foregoing facts and adding the following: "At said auction held on the 17th day of June, 1922, said Thomas C. Dillon gave notice that the house upon said mortgaged property could be used only as a single private residence, and that any deposit

accepted on said sale would be forfeited ·if the party making said deposit subsequently defaulted as to the payment of the balance of the purchase price. Notice of said restriction was not given to those who were present at the auction held on the first day of May, 1922, and no statement as to the forfeiture of said deposit was made."

All the allegations of the petition were admitted by the appellant, DiMaggio, and thereupon the petition was heard by the court, which ordered the said sum of $1,600 to be returned to the petitioner, Serafin, appellee in this court. From this adjudication DiMaggio appealed. Further facts appear in the opinion.

*Arthur T. Keefe,* for the appellant (Tomasso Di-Maggio).

*Charles L. Smiddy,* for the appellee (Opolonio Serafin).

KEELER, J.  The petitioner based his application for return of the deposit made by him on two grounds: first, that the sale to him had never been ratified by the court; and second, that the notices given by the committee, at the time of the second sale of the mortgaged property, disclosed the existence of the restrictive covenant as set forth in the finding of facts, and also that a forfeiture of any deposit made would occur in case the purchaser failed to complete the sale and take title, as to both of which provisions no mention was made at the earlier sale at which the petitioner bid in the property.

It is claimed by the appellant that no confirmation of the sale was necessary to hold the money deposited, and that a fair construction of the record discloses that the property to be sold, and the restrictions connected therewith, were as fully disclosed at the first sale as

at the second; and that the requirement of a deposit at the first sale was equivalent to the statement at the second sale that a forfeiture would ensue if the purchaser failed to comply with the terms of the sale.

A foreclosure by sale is an equitable proceeding and governed by the general law pertaining to judicial sales consequent upon an equitable decree, unless in some way modified by statute, or by a proper rule of court having a like effect, as has been done in some jurisdictions. It has been generally held that an equitable judicial sale requires confirmation or ratification before it can become complete and create legal rights and liabilities between or among the parties legally interested therein. "As a rule, the sale must be finally confirmed before any action can be taken to hold the bidder to his liability for the purchase price, by resale or otherwise. For until confirmation, the bids are mere offers to purchase, the contract is not complete, and the purchaser cannot be in default thereunder." 16 R. C. L., Judicial Sales, § 123, p. 169. To the same effect are 24 Cyc. 33; Rorer on Judicial Sales, §§ 2, 3, 122, 124; 2 Daniell's Chancery Pleading & Practice (6th Amer. Ed.) *1281.

For the rule as specifically applied to foreclosure sales, see 3 Jones on Mortgages (7th Ed.) § 1637; 1 Wiltsie on Mortgage Foreclosure (3d Ed.) § 656.

We do not find that the point just considered has been passed upon by this court. In General Statutes, Chapter 316, are collected various statutory provisions as to the sale of property under order of court, and § 6077 provides that such sales shall be made by a committee appointed by the court, and there is no requirement of confirmation; yet it has certainly been the practice to report all such sales to the court and secure confirmation. Among the varieties of sale included

in said Chapter, that of most frequent occurrence is a sale in partition, and in such a case we find in the Practice Book (Form 500), a form of supplemental judgment which confirms the sale. It can hardly be questioned that the provision of such a form reflects a long-existing practice in that regard.

Passing to the express terms of our statute relating to foreclosure sales, we find that § 5227 provides as follows: "When a sale has been made pursuant to a judgment therefor, and ratified by the court, a conveyance of the property sold shall be executed by the person appointed to make the sale . . ."; and § 5228 further provides: "The proceeds of every such sale shall be brought into court, there to be applied if the sale be ratified, in accordance with the provisions of a supplemental judgment then to be rendered in said cause specifying the parties who are entitled to the same and the amount to which each is entitled. . . ."

So we see that the ratification of the sale is in a way the focal point of the proceeding after the judgment therein. As regards what has gone before it makes valid the advertisement of the sale, the proper conduct of the same pursuant to the original judgment and notice and, if such be the case, the fact of money paid into court. Regarding what follows, it fixes the various disbursements and expenses of the sale and regulates the disposal of the net proceeds among the parties thereto. It makes operative the various acts and proceedings required by the statute. The preceding acts of the committee take effect when "ratified by the court" (§ 5227), the application of the proceeds takes place "if the sale be ratified" (§ 5228). The ratification or confirmation of the sale would therefore appear to be a condition precedent to any operative effect arising out of the sale. This analysis of the statutory proceedings leads to the conclusion that the provisions

of our statute are entirely in accord with the rules generally prevailing as enunciated above.

We have now to apply these rules and provisions to the matter in question. We note that there is disclosed in the record no confirmation of the first sale. Upon the application of the plaintiff the court made an order modifying and amending the judgment of sale, finding that the committee has been unable to sell the mortgaged property as "appears from the report of said committee on file." This report was filed and accepted the same day on which the amendment of the judgment was made, and states the fact of the sale to Serafin, his making an initial payment of $1,600, and the payment of that amount into court by the committee.

The sum paid by Serafin to the committee was the initial payment of ten per cent of the amount of his successful bid for the property, in accordance with the terms of sale as announced by the committee, in accordance with a well-known rule generally observed in auction sales of real property, whether judicial or ordinary sales. A deposit was not required by the terms of the judgment, but it was well within the measure of legal discretion of the committee to make such a requirement. There are usually minor details of sale which must be left to the judgment of the person making the same. So far as appears by the record, the committee required this sum to be made as an initial payment. Where a sum is paid to a person making a public sale by the successful bidder, its character may be defined by the terms of sale; if these provide for a forfeiture of the amount so paid in case the purchaser shall fail to consummate the sale, then the payment is forfeited. *Donahue* v. *Parkman*, 161 Mass. 412, 37 N. E. 205. If liquidated damages are provided for, then the sum paid is affected by that character.

If a forfeiture is claimed it must arise out of the provisions of either the judgment, or of the conditions of sale stated at the auction. It will not be implied from any other circumstances. Forfeitures are not favored in equity. *Chancellor* v. *Gummere*, 39 N. J. Eq. 582; *Bleeker* v. *Graham*, 2 Edw. Ch. (N. Y.) 647.

By the weight of authority it is held that a deposit by a purchaser at a judicial sale, where the character of the same is not fixed by the judgment of the court or the terms of sale, is governed by the same rules that obtain in ordinary sales, as to the rights of the parties therein, with this difference, that in the ordinary private sale these rights, if in question, must be fixed by result of a proper action between the parties, while if there is payment of a deposit into court (as in the instant case), as the purchaser becomes a party to the action by operation of law on account of his bid, the rights of the parties can be determined in the pending action, without resort to independent litigation. The deposit made and paid in, if the sale is consummated, is applied as part of the purchase money, and it always has potentially and in law that character, until the same is changed by action of the court according to the exigencies and equities of the case. 3 Jones on Mortgages (7th Ed.) § 1642; 1 Wiltsie on Mortgage Foreclosure (3d Ed.) § 664. In the present case the $1,600 had been paid into court and its disposition was subject to its determination and judgment.

Proceeding to a consideration of the remedies against a purchaser who has defaulted upon a judicial sale, it appears that the procedure has been well settled. Upon proper application the court may discharge the sale and order a resale; may confirm the sale, order the purchaser to complete payment, and hold him in contempt for noncompliance with the order; may confirm the sale and order a resale for the account of the purchaser,

charging him with any deficiency arising out of the resale, and incidentally order the application of money paid as a deposit to be applied on account of such deficiency. 3 Jones on Mortgages, § 1642; 1 Wiltsie on Mortgage Foreclosure (3d Ed.) §§ 664–666; 2 Daniell's Chancery Pleading & Practice (6th Amer. Ed.) s. pp. 1281, 1282; 16 R. C. L., Judicial Sales, § 126, pp. 173, 174; *Mount* v. *Brown*, 33 Miss. 566, S. C. 69 Amer. Dec. 369, with extensive note of cases; *Camden* v. *Mayhew*, 129 U. S. 73, 9 Sup. Ct. 246; *Goodwin* v. *Simonson*, 74 N. Y. 133.

Passing to a consideration of what was actually done in the present case, we gather from the record that after the failure of the purchaser Serafin (the present appellee), the court, upon the application of the plaintiff in the action, made an order of resale without in terms discharging or ratifying the earlier sale, differing in no respects from the form of the sale ordered in the original judgment, except as to dates of advertisement and sale, and with a further provision that the expenses of the earlier sale were to be paid out of the proceeds of sale, as well as those of the sale contemplated by the modification of the judgment. No provision is made to charge the purchaser with any deficiency resulting from resale, nor with any of the additional expenses incurred in the resale. The modified and amended judgment is simply an order of resale, its operation goes no further than its terms. It imposes no liability upon the purchaser. Unless such a liability or charge is expressly imposed, the purchaser is discharged. It does not appear of record that anything but a simple resale was asked from the court; it would undoubtedly appear, had any effort been made at that stage of the proceedings to procure any modification of the judgment, or any order, charging the purchaser. The latter was a party to the action both by service as an original de-

fendant, and by operation of law as a purchaser, as has been above stated. He appeared in the action and was one of the defendants moving for a foreclosure by sale as set forth in the original judgment. It is a fair inference that all appearing parties were represented at the hearing when the court granted the modified judgment or order of resale. That the court intended the order as simply one of resale, and a complete reopening of the original judgment, is borne out by the fact that a provision for redemption was inserted in the modified judgment. Had a confirmation of the sale been made by the court, and then a simple resale ordered, it might be claimed that the question of the liability of the purchaser lay in reserve, subject to the further action of the court, but as there is in the record no suggestion of confirmation, no such claim can be entertained. It would, therefore, appear that the purchaser (petitioner) was discharged from any liability created by his bid, and entitled to have his deposit returned. The sale to him was treated as a nullity. Had any provision charging the purchaser been inserted in the modified judgment, he would then have been in a position to protect his interests at the second sale; in the absence of such a provision he was not called upon to take further action. Procuring such a resale as occurred in the instant case, operated as an election to waive the first sale, and to take the risk of obtaining a better price at the later sale. It will be noted that DiMaggio, the appellant in this court, had his day in court to urge (if he so desired) that the order of resale should include a provision charging Serafin with any deficiency which might occur on the second sale. The settled practice is outlined in citations following: 3 Jones on Mortgages (7th Ed.) § 1642, p. 266; 2 Daniell's Chancery Pleading & Practice (6th Amer. Ed.) s. p. 1282; *Phelan* v. *Downs*, 59 N. Y. App. Div. 282, 69

N. Y. Supp. 375; affirmed without opinion in 173 N. Y. 619, 66 N. E. 1115; *Galpin* v. *Lamb*, 29 Ohio St. 529; *Green* v. *Ansley*, 92 Ga. 647, 19 S. E. 53; *Campe* v. *Saucier*, 68 Miss. 278, 8 So. 846; *Schaefer* v. *O'Brien*, 49 Md. 253. An excellent and comprehensive statement of the rule is found in *Hill* v. *Hill*, 58 Ill. 239, 241, in which the court says: "Where a person becomes a purchaser under a decree of the court of chancery, and refuses to complete his purchase, in order to charge him with any deficiency arising on a resale, the master should report the sale and refusal to the court, and after confirmation of the report, a notice of motion should be served on the purchaser, that he may be ordered to pay in his purchase money within a given time, or in default thereof, that the estate purchased by him may be resold at his risk. The order of resale, on failure to pay the purchase money, or show cause therefor, should direct the property to be resold at the bidder's risk and expense." The procedure here outlined is to be commended as one fair to all parties, and an orderly method to be pursued. Under our practice, with the purchaser in court, as was the fact in the instant case, a motion placed on the short calendar would properly serve the function of an order to show cause.

Counsel for the appellee has called to our attention, as negativing the necessity of a formal order of confirmation in order to fix the liability of a defaulting purchaser, the case of *Camden* v. *Mayhew*, 129 U. S. 73, 83, 9 Sup. Ct. 246, wherein it is said that "upon appellant refusing to pay the amount bid, the court, without confirming the sale by a formal order, could have held him to his offer, and ordered a resale in the meantime at his risk, both in respect to the expenses of the resale and any deficiency resulting therefrom." It may well be that in case an order of resale were made

at the risk of the purchaser, an order of confirmation might be held to be implied or indeed unnecessary as a matter of procedure. The important feature is that the order should provide for a sale at the purchaser's risk and charge him with expenses and any deficiency arising out of the second sale. In the present case this was not done, and the authority cited does not bear out the appellant's contention.

The case of *Phelan* v. *Downs*, 59 N. Y. App. Div. 282, 69 N. Y. Supp. 375, is very much in point, in that it has a decided resemblance to the case under consideration, and also contains a clear statement of the law generally accepted. The court says (p. 287): "There was no contract of purchase and sale between Gillig and the referee. Gillig made an offer for the premises which the court, on its part, in the exercise of its discretion, might accept or reject. *Camden* v. *Mayhew*, 129 U. S. 73, 9 Sup. Ct. 246, 32 L. Ed. 608; *Fisher* v. *Hersey*, 78 N. Y. 387, 388. The sole liability on Gillig's part was to comply with the terms of sale under which he bid. Those terms did not provide for any forfeiture. They did provide for a resale without order of court, or for a sale, at the option of the plaintiff, upon a new order. What would have been Gillig's liability had they been resold without order, we need not determine. They were, in fact, sold upon a new order which neither forfeited the $6,000, nor made Gillig responsible for the deficiency. Under such circumstances, within the authority of the following cases, Gillig could, himself, reclaim the $6,000. He would not forfeit the amount, because the terms of sale did not so provide. *Miller* v. *Collyer*, 36 Barb. (N. Y.) 250. It could not be applied upon any deficiency, because the resale was not had under an order that made him liable for the deficiency." For the reasons above set forth we conclude that by reason of the lack of confirmation of sale

or of any order or judgment taking the place thereof or performing the same function, the petitioner was entitled to the return of his deposit as ordered by the court.

Passing to the second claim made by the appellee herein (petitioner in court below), that the notice given by the committee at the second sale imposed more onerous terms upon a purchaser thereat, than was imposed in the notice given at the earlier sale, we have the allegations of the petition that the additional burden declared to be imposed upon such purchaser consisted in the statement that the house upon the property could only be used as a single private residence, and also that any deposit made by a purchaser would be forfeited in case of his failure to complete the sale. These allegations were admitted by the respondent to the petition, DiMaggio, and constitute facts in the record on appeal. Nevertheless, the original judgment, the reports of the committee as to the first sale and the second sale, all contain a description of the property sold, which set forth in full the restrictive provisions, including that relating to the occupancy, and in each of the reports the committee states that he offered for sale the property described below. Such being the case, as the description quoted in the reports includes the restrictions, it is fairly inferable that these latter were made known to bidders. There is hence an apparent conflict between this fact, and the other fact alleged in the petition and admitted by the respondent (appellant) to be true, that notice of any restriction on the property was not given at the first sale. Perhaps these statements may be reconciled by construing the finding as meaning that the fact of restriction was orally emphasized and explained by the committee at the second sale, and not at the first. Be that as it may, the further fact appears that forfeiture of any

sum paid as a deposit, was announced at the second sale.

The trial judge bases his decision upon the motion to return the deposit to Serafin, chiefly upon the fact that the announced terms at the second sale were more onerous than those attending the earlier sale, as appears from the memorandum of decision in which he says: To hold a "purchaser liable for a deficiency at a second sale, the terms and conditions of that sale must be the same or at least not more onerous than those of the first. 24 Cyc. 47; *Shinn* v. *Roberts,* 20 N. J. L. 435." This is a correct statement of the law. 1 Wiltsie on Mortgage Foreclosure (3d Ed.) § 665, p. 978; 16 R. C. L., Judicial Sales, § 125, p. 172; *Mount* v. *Brown,* 33 Miss. 566 (in notes as reported in 69 Amer. Dec. 373); 3 Jones on Mortgages (7th Ed.) § 1643, p. 268; *Riggs* v. *Pursell,* 74 N. Y. 370; *Pepper* v. *Deakyne,* 212 Pa. St. 181, 61 Atl. 805. The claim of the appellant, as we have previously stated it, is that a fair construction of the finding shows that the property and all restrictions thereon were as fully brought to the attention of bidders at the first sale as at the second, and further, that the requiring of a deposit was equivalent to a statement that the same would be forfeited in case of default in completing the purchase. Leaving the first of these claims with such observations as we have previously made as to the exact facts bearing upon the same, it clearly should be held regarding the second claim that there was a manifest difference in the conduct of the second sale, as regards the disposition of any deposit made, from the conduct of the first sale where a deposit was required without particular specification of the purpose of requiring it. This deposit so made stood simply as an initial payment, applicable upon the purchase price if the sale was confirmed and consummated, otherwise subject to such disposition

as the court might deem equitable having regard to all the facts of the case. On the other hand, a forfeiture of the deposit would result in depriving the bidder of all claim to the same or to a return thereof, in case, without excuse, he made default in consummating the sale, whatever might be the result of a resale.

Without doubt the court in its original judgment, or in its order of resale, might have made a provision for a forfeiture, strictly so-called, of any money paid as a deposit; but it would clearly be a stretch of power on the part of the committee to so provide in the terms of sale, apart from any such provision in the judgment. It is very proper and usual for the latter to require a deposit which would be subject to the order of the court in disposing of the action; it is quite a different procedure to stamp such a payment with the condition of a strict forfeiture. The statement made in this regard at the second sale introduced a feature considerably more onerous than any obtaining at the first sale, and had the effect of relieving the petitioner from any liability flowing from his deposit and of entitling him to the return of the same, as provided by the order of the Superior Court.

There is no error.

In this opinion the other judges concurred.