ELEANOR E. WILCOX ET AL. *v.* WILLARD SHOPPING CENTER ASSOCIATES ET AL.
(8085)
(8106)

DALY, O'CONNELL and FOTI, Js.

Argued May 9—decision released September 4, 1990

*Howard C. Kaplan,* with whom were *Eileen I. Eliott* and, on the brief, *Paul N. Gilmore* and *Matthew J. Forstadt,* for the appellants-appellees (plaintiff and named defendant).

*J. Paul Johnson,* with whom, on the brief, was *Holly K. Dustin,* for the appellees-appellants (defendant Edward Almond et al.).

O'CONNELL, J. These consolidated appeals arise out of an action for partition by sale that was the subject of a prior decision by our Supreme Court. *Wilcox* v. *Willard Shopping Center Associates,* 208 Conn. 318, 544 A.2d 1207 (1988). In its decision, the court remanded the matter to the trial court to set a new judicial sale date. Id., 329.

On remand, the trial court set a new date and the committee published legal notice of the sale. The notice provided in part that the successful bidder would be required to make a $100,000 deposit and to sign a contract providing for forfeiture of the deposit if the balance was not paid within thirty days of the court's approval of the sale.[1] A bidder's information package,

---

[1] The advertisement read in pertinent part: "The highest bidder will be expected to sign a contract for Purchase with the Committee at the conclusion of the bidding. Such contract will contain no financing contingencies in favor of the purchaser and will provide for the forfeiture of the deposit upon the failure of the purchaser to pay to the Committee the balance of the purchase price within 30 days from the date of Court approval of said sale."

which furnished further information about the sale, indicated that "the deposit can be refunded only upon order of the court and there is a strong likelihood that it will be declared forfeited if the successful bidder did not consummate the sale within thirty days of court approval."[2] Both the sample contract accompanying the bid package and the actual contract were silent as to forfeiture or damages.

The sale took place on October 15, 1988, and Edward Almond and his partner, Michael Flaherty (the bidders), successfully bid $4.5 million. Following the sale, they signed the contract to purchase the property. Shortly thereafter, however, the bidders learned that the property was not connected to sewers but instead relied on a defective septic system. They also discovered that instead of their planned 60,000 square foot building, zoning regulations would allow only a 12,000 square foot building.

Concluding that the property was worth considerably less than their $4.5 million bid, the bidders informed the committee in charge of the sale that they would not complete the sale. At the hearing to confirm the sale, the trial court found that there was no justification for discharging the bidders or rescinding the contract. Consequently, the court confirmed the sale but limited the bidders' liability to forfeiture of the $100,000 deposit. It then ordered that a new sale be held, which brought a high bid of $3,430,000.

The plaintiff Robert Sandolo and the named defendant, owners of the property (the owners), join in bring-

[2] The notice to bidders read in pertinent part: "The premises are being sold subject to no financing contingency. In the event the successful bidder is either unable or unwilling to consummate the same within 30 days from the date of court approval of said sale or upon the passing of the deed, whichever may first occur, the deposit can be refunded only upon order of the Court, and there is a strong likelihood that it will be declared forfeited."

ing this appeal, the gravamen of which is that the court should have ordered the resale of the property for the account of the bidders, charging them with any resulting deficiency.[3] The bidders have cross appealed, claiming that the trial court should not have confirmed the sale but instead should have returned their $100,000 deposit and limited their liability to the expenses of the second sale.

I

We first consider the bidders' cross appeal because if they prevail, we need not reach the owners' claims. The bidders assert that they should be allowed to rescind the contract and recover their deposit on the ground of unilateral mistake caused by Almond's mental illness. In the alternative, they argue that the committee and the court-appointed receiver of rents improperly withheld information about material defects in the property. "It is generally recognized that the grounds which would warrant a court's refusal to approve a sale are fraud, misrepresentation, surprise or mistake." *Jefferson* v. *Karpowicz,* 10 Conn. App. 198, 200, 522 A.2d 322 (1987). None of these conditions exists in this case.

Almond, a certified public accountant, bid on behalf of the partnership. The trial court found that, at the

---

[3] The owners' specific claims are: "Did the Trial Court Err By Not Requiring Edward Almond and Michael Flaherty to Pay the Difference Between Their Bid ($4,500,000.) and the Highest Bid at the Second Sale ($3,430,000.) for a Total of $1,070,000. as Against Which They Would Receive Credit for Their Deposit of $100,000?

"(A) Did the Trial Court Err by Failing to Apply Any of the three Available Remedies Permissible Under Settled Connecticut Law?

"(B) Did the Trial Court Err by Imputing a 'Forfeiture' Provision to the Contract?

"(C) Did the Trial Court Err in Ruling that the 'Forfeiture' Provision Constituted a Liquidated Damages Provision?

"(D) Did the Trial Court Err by Invoking its Equitable Powers to Limit The Bidder's Liability to Their $100,000.00 Deposit?"

time of the sale, Almond was in the manic phase of a manic depressive psychosis from which he suffered. On the basis of expert medical testimony, the court also found that a person in Almond's condition would be inclined to bid wildly and compulsively and believe that he was invincible. The court concluded, however, that although Almond's judgment may have been impaired, he still possessed the capacity to appreciate the fact that he was bidding to purchase real estate at a public auction. The court further found that this mental condition was not known to the committee in charge of the sale nor to Almond's partner, who observed and approved of Almond's actions. We are satisfied that the trial court properly concluded that Almond had the mental capacity to bid.

The bidders' misunderstanding concerning the property's condition and zoning regulations was not a sufficient ground for not approving the sale. The property was sold "as is" and the bidders do not claim that anyone connected with the sale was guilty of intentional misrepresentation. Furthermore, sophisticated investigation would not have been required for the bidders to discover these defects and limitations.

The court was correct in finding that none of the required conditions for disapproval of a contract was present in this case and that the sale should therefore be approved and the deposit forfeited. Accordingly, there is no merit to the bidders' cross appeal seeking a reversal of the forfeiture order and a return of their deposit.

## II

We turn now to the question of whether the trial court was required to order that the resale be held for the account of the bidders and that the bidders be held liable for any deficiency. The owners' claims are sub-

sumed under the larger question of whether, under the facts of this case, a defaulting buyer's liability at a public sale is limited to forfeiture of his deposit.

The owners rely on *Mariners Savings Bank* v. *Duca*, 98 Conn. 147, 155–56, 118 A. 820 (1922), which sets out three courses of action open to a court that is confronted with a defaulting bidder. The court may (1) discharge the original sale and order a new sale, (2) confirm the original sale and order the purchaser to pay according to his bid, enforcing payment with its contempt powers, or (3) confirm the sale and order a resale for the account of the purchaser, holding the purchaser liable for any deficiency and applying the deposit to the deficiency. Id.

The owners complain that the court ignored these alternatives and fashioned its own remedy. This argument assumes that the three possible courses of action are hard and fast rules that leave the trial court with no flexibility or discretion. They cite no authority for this proposition but instead rely on cases involving conventional contract disputes.

The owners' position ignores the fact that a partition action is not a conventional contract action but rather is equitable in nature. *Land Enterprises, Inc.* v. *Dorman*, 17 Conn. App. 4, 10, 549 A.2d 672 (1988). As such, this case is "governed by the general law pertaining to judicial sales consequent upon an equitable decree, unless in some way modified by statute, or by a proper rule of court having a like effect . . . ." *Mariners Savings Bank* v. *Duca*, supra, 152. Here, the court's general equitable powers were supplemented by General Statutes § 52-502 (a) which provides in part that "the court . . . may make any order necessary to protect the rights of all parties in interest and to carry the sale into effect." The bidders clearly are parties in interest here. *Mariners Savings Bank* v. *Duca*, supra, 161–62.

In fashioning its remedy, the trial court considered (1) that the newspaper advertisement specified only a forfeiture of the $100,000 deposit if the successful bidder did not complete the purchase, (2) that the bidder's package stated that in the event of default, "there is a strong likelihood" that the $100,000 deposit would be declared forfeited by the court, and (3) that the contract was silent on what would happen to the deposit in the event of default.

Moreover, the court found, from expert testimony, that the reasonable value of the property was "at least $2,500,000 but most likely not too much more" and that to hold the bidders responsible for any deficiency from the resale would allow the owners to reap a huge and inequitable windfall. From all of this the court concluded that a reasonable person in the position of the bidders would have believed that his liability upon default would be limited to a forfeiture of his $100,000 deposit. The action of the trial court was appropriate given "the exigencies and equities of the case." *Mariners Savings Bank* v. *Duca,* supra, 155.

The court properly exercised its equitable powers in ordering the bidders' deposit forfeited and in limiting their liability to that amount.

The judgment is affirmed with respect to the issues raised on the appeals and the cross appeals.

In this opinion the other judges concurred.