******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## CHELSEA GROTON BANK *v.* GATES REALTY HOLDINGS, LLC, ET AL.
### (AC 46032)
### (AC 46034)

Alvord, Moll and Suarez, Js.

*Syllabus*

The plaintiff in error, W, the initial successful bidder and a nonparty in the underlying foreclosure action brought by the defendant in error, C Co., filed two writs of error with this court challenging the trial court's orders granting C Co.'s motion to forfeit his deposit and denying his motion to intervene as of right. W failed to close on the sale of the property within thirty days from the notice of the court's approval of the sale, and C Co. filed the motion to forfeit, a motion to reset the sale date, and a caseflow request seeking expedited adjudication of the motions, but did not serve any of the filings on W. The court granted the motions and, the property was sold to another entity. *Held*:

1. The trial court improperly granted C Co.'s motion to forfeit W's deposit: in determining whether to order the forfeiture or the return of a deposit, the court, sitting in equity, may consider a variety of factors, and, because forfeiture is not automatic and is subject to the balancing of the equities, a defaulting, nonparty purchaser is entitled to notice of a motion to enforce the forfeiture of a deposit; moreover, the proper procedural mechanism and the manner of service of the notice of a motion to forfeit a deposit to which a defaulting purchaser is entitled necessarily depend on whether the defaulting purchaser already has a party appearance in the case, and, here, W, a nonparty, was entitled to assume that the proper legal procedure would be followed and that an order to show cause would be issued, citing him to appear and to be heard, such that the lack of service of the motion on W was legally insufficient to render W subject to the jurisdiction of the court; accordingly, on remand, it will be for the trial court, applying equitable principles, to consider whether W's deposit should in fact be forfeited, this court holding only that W was entitled to notice and an opportunity to be heard on the motion to forfeit.

2. The second writ of error, challenging the trial court's denial of W's motion to intervene as of right was dismissed as moot; in light of this court's granting of the first writ of error, this court could not afford W any additional practical relief with respect thereto.

Argued October 2, 2023—officially released August 20, 2024

*Procedural History*

Writ of error from the order of the Superior Court in the judicial district of New London, *Young, J.*, granting a motion by the defendant in error to forfeit the deposit in a foreclosure action, and writ of error from the order of the Superior Court in the judicial district of New London, *S. Jacobs, J.*, denying a motion by the plaintiff in error to intervene as of right, filed by the plaintiff in error in this court. *Writ of error granted in AC 46032; further proceedings; writ of error dismissed in AC 46034.*

*Frank J. Liberty*, for the plaintiff in error (Ross Weingarten).

*Brian D. Rich*, for the defendant in error (Chelsea Groton Bank).

*Opinion*

MOLL, J. These writs of error were commenced by the plaintiff in error, Ross Weingarten, who was, with respect to property located at 15 Elm Street in Groton, the initial successful bidder in the underlying foreclosure action in which the trial court rendered a judgment of foreclosure by sale. In Docket No. AC 46032, the plaintiff in error challenges the court's order granting the motion, filed by the defendant in error, Chelsea Groton Bank, to forfeit his deposit; in Docket No. AC 46034, the plaintiff in error challenges the court's order denying his motion to intervene as of right. In Docket No. AC 46032, we grant the writ of error; in Docket No. AC 46034, we dismiss the writ of error on the ground of mootness.[1]

---

[1] The plaintiff in error's respective writs of error, although not consolidated, were heard together at oral argument before this court pursuant to an order issued by this court on September 28, 2023.

The following facts and procedural history are relevant to our resolution of these writs of error. On October 16, 2019, the defendant in error commenced this action seeking, among other things, the foreclosure of mortgages on several properties. In count one of its complaint, the defendant in error sought the foreclosure of a mortgage on property located at 15 Elm Street in Groton. On November 23, 2021, the trial court, *Young, J.*, rendered a judgment of foreclosure by sale with respect to count one "as per [the] stipulation of the parties . . . ." The judgment set (1) the amount of the debt, costs, and attorney's fees at $1,795,098.98; (2) the fair market value at $3,670,000; (3) the sale date as January 29, 2022; and (4) a required deposit amount of $367,000. The sale date was continued to March 12, 2022.

Following the plaintiff in error's successful bid of $3,520,000, the foreclosure committee submitted the plaintiff in error's $367,000 deposit to the clerk of the Superior Court in New London. On March 31, 2022, the court, *Hon. Emmet L. Cosgrove*, judge trial referee, approved the sale and the committee deed. Pursuant to paragraph 20 of the Uniform Standing Orders for Foreclosure by Sale (standing orders), the plaintiff in error was required to close on the sale no later than thirty days from the notice of the court's approval of the sale.[2] The plaintiff in error failed to do so. Consequently, on May 3, 2022, the defendant in error filed a motion to forfeit the deposit (motion to forfeit) and a motion to reset the sale date, and on May 4, 2022, it filed a caseflow request seeking expedited adjudication of the motions. The defendant in error did not serve

---

[2] Paragraph 20 of the standing orders provides in relevant part: "The high bidder/purchaser must close no sooner than 21 days but no later than 30 days from the date of notice of the [c]ourt's approval of the committee sale. The deposit may be forfeited if the purchaser does not close within 30 days of the notice of approval. . . ."

any of these filings on the plaintiff in error. On May 10, 2022, the court, *Young, J.*, granted the two motions and the caseflow request (May 10 orders).

On May 11, 2022, the plaintiff in error filed an appearance through counsel as "other."[3] On May 13, 2022, the plaintiff in error filed a motion to vacate the May 10 orders, which the court denied on August 18, 2022. On May 25, 2022, the plaintiff in error filed a motion to reargue the May 10 orders, which the court denied on June 9, 2022. A new sale date was set for October 22, 2022. On October 24, 2022, the plaintiff in error filed a motion to intervene as a party defendant as a matter of right, which the court, *S. Jacobs, J.*, denied. Thereafter, as approved by the court, the property was sold to Captain's Mansion LLC for the sum of $3,050,000, with the closing on the property held on December 29, 2022. Meanwhile, the plaintiff in error filed these writs of error.[4]

## AC 46032

In the first writ of error, the plaintiff in error claims that the trial court improperly granted the motion to forfeit without affording him notice thereof and an opportunity to be heard. We agree.

Whether the plaintiff in error was entitled to notice and an opportunity to be heard with respect to the motion to forfeit presents a question of law over which we exercise plenary review. See *Commissioner of Environmental Protection* v. *Farricielli*, 307 Conn. 787, 819, 59 A.3d 789 (2013) (applying plenary review to nonparty's due process claim predicated on lack of notice and opportunity to be heard).

---

[3] The trial court's electronic case detail reflects the plaintiff in error's status as "successful bidder."

[4] Although significant motions practice relating to the property subsequently has occurred in the trial court, it is unnecessary to recite it for purposes of this appeal.

Our analysis of the plaintiff in error's claim proceeds in two parts. We first address the threshold question of whether notice to a defaulting purchaser of a motion to enforce forfeiture is required beyond the notice set forth in paragraph 20 of the standing orders and the notice contained in the Judicial Branch Form "Foreclosure by Sale Fact Sheet—Notice to Bidders" (notice to bidders).[5] We answer that question in the affirmative.

Paragraph 20 of the standing orders provides in relevant part: "The high bidder/purchaser must close no sooner than 21 days but no later than 30 days from the date of notice of the Court's approval of the committee sale. *The deposit may be forfeited* if the purchaser does not close within 30 days of the notice of approval. . . ." (Emphasis added.) Relatedly, the notice to bidders provides in relevant part: "The successful bidder must be prepared to pay the balance of the purchase price within thirty (30) days after the approval of the sale. *The deposit may be ordered forfeited* if the successful bidder fails to complete the transaction within the thirty-day period." (Emphasis added.) It is undisputed, and we agree, that the use of the term "may" in the foregoing clauses means that "[s]uch forfeiture provision is not self-executing . . . but must be enforced by court order to that effect . . . ." 1 D. Caron & G. Milne, Connecticut Foreclosures (12th Ed. 2022) § 8-3:2, p. 629.

In determining whether to order the forfeiture or the return of a deposit (in full, in part, or not at all), the court, sitting in equity,[6] may consider, inter alia, the

---

[5] The record reflects that a notice to bidders was posted to the Judicial Branch Pending Foreclosure Sales webpage in connection with, and prior to, the March 12, 2022 foreclosure sale.

[6] "It is well established that a foreclosure action constitutes an equitable proceeding. . . . In an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Citation omitted; internal quotation marks omitted.) *Citicorp Mortgage, Inc.* v. *Burgos*, 227 Conn. 116, 120, 629 A.2d 410 (1993).

circumstances surrounding the defaulting purchaser's failure to close within the requisite time period, any notice provisions relating to forfeiture and/or other consequences in the event of a default, whether the second sale brought a higher sale price than the first, whether the second sale brought a lower sale price than the first (and, if so, whether the deposit exceeds the amount of any deficiency from the second sale), and whether a particular result would yield a windfall on a creditor or owner. See id., pp. 629–31; see also *Citicorp Mortgage, Inc.* v. *Burgos*, 227 Conn. 116, 121, 629 A.2d 410 (1993) ("In the event of default by the purchaser, several alternatives are open to the trial court. . . . [These include] holding the purchaser liable for any deficiency arising out of the resale."); *Wilcox* v. *Willard Shopping Center Associates*, 23 Conn. App. 129, 135–36, 579 A.2d 130 (1990) (in equitable action for partition by sale, affirming trial court's exercise of equitable powers in ordering forfeiture of deposit and limiting defaulting purchasers' liability to that amount). Thus, because forfeiture is not automatic and is subject to the balancing of the equities, we conclude that a defaulting, nonparty purchaser is entitled to notice of a motion to enforce the forfeiture of a deposit.

We next address the nature of the notice to which the plaintiff in error was entitled. In considering this question, we are not left to write on a blank slate. We begin with our Supreme Court's decision in *Banca Commerciale Italiana Trust Co.* v. *Westchester Artistic Works, Inc.*, 109 Conn. 23, 145 A. 20 (1929) (*Banca Commerciale*). In *Banca Commerciale*, a foreclosure by sale action, the first purchaser, the G. F. Beach Realty Company (company), paid a deposit at the time of the sale but defaulted in making payment to complete the sale. Id., 25. The foreclosure committee (committee) thereafter filed a motion requesting that its report be accepted, the sale be confirmed, the company be

adjudged in default, a resale be ordered, and the company be held liable for the difference between the original foreclosure sale price and the price realized upon a second foreclosure sale, less the amount of the company's deposit (motion for resale and deficiency order). Id. The committee personally served a notice of the motion on the treasurer of the company, who delivered the notice to the company's president, an attorney. Id. Upon the court's granting of the motion and its entry of judgment, the committee sold the property at a price less than the original foreclosure sale price. Id. The committee reported the second sale and the deficiency, and the court rendered judgment confirming the second sale and finding the company liable for the deficiency. Id. Thereafter, the company moved to open the judgments, and the motion was granted "because before the order of resale was made no rule was served upon the [company] to show cause why it should not be held in default and an order of resale be made charging it with any deficiency in the price realized." Id., 25–26.

The plaintiff claimed on appeal therefrom that the personal service of a notice of the committee's motion for resale and deficiency order on the company's treasurer, which was subsequently delivered to the company's president, was sufficient to subject the company to the judgments of the court. Id., 26. Our Supreme Court disagreed and, in affirming the setting aside of the judgments, reaffirmed the principle set forth in *Mariners Savings Bank* v. *Duca*, 98 Conn. 147, 158, 118 A. 820 (1922), that requiring a "procedure by a rule to show cause was the orderly and fair method" to bring a defaulting purchaser within the jurisdiction of the court such that it would be bound by the court's judgment. See *Banca Commerciale Italiana Trust Co.* v. *Westchester Artistic Works, Inc.*, supra, 109 Conn. 26.

The court in *Banca Commerciale* explained: "By his purchase, the purchaser does become so far a party to

the action that he submits himself to the jurisdiction of the court. But before any order may be made for a resale of the premises at his charge, he is entitled to present any facts which may lead the court, acting upon equitable principles, to hold him not to be in default of his obligation under his purchase. . . . He is not so far a party that by statute or practice he is called upon to enter an appearance and his failure to do so does not place him in a position where he may be treated as one in default of appearance. Before he may be adversely affected by a judgment of the court he is entitled to legal notice and hearing. . . . The necessity of a proceeding by a rule to show cause issuing from the court, or a like process, with proper service and return, is apparent. . . . [U]nless a procedure is followed such that the giving of notice to the purchaser definitely appears in the record of the court, any judgment rendered ordering a resale and charging the deficiency to him would on the face of the record appear to be erroneous, and subject to reversal by writ of error." (Citations omitted.) Id., 26–27. In sum, the court held that the company, as a defaulting, nonparty purchaser, was entitled to notice by way of service of a rule or order to show cause, giving it an opportunity to appear and be heard. Id., 28.

In contrast, in *Mariners Savings Bank* v. *Duca*, supra, 98 Conn. 147, because a defaulting purchaser was also an appearing fourth mortgagee on the foreclosed property, customary service of a motion concerning the resale was deemed sufficient. Id., 158. Our Supreme Court stated: "Under our practice, with the purchaser in court, as was the fact in the instant case, a motion placed on the short calendar would properly serve the function of an order to show cause." Id.

In sum, the proper procedural mechanism and the manner of service of the notice of a motion to forfeit a deposit to which a defaulting purchaser is entitled

necessarily depend on whether the defaulting purchaser already has a party appearance in the case. See *Banca Commerciale Italiana Trust Co.* v. *Westchester Artistic Works, Inc.*, supra, 109 Conn. 26 (recognizing this dichotomy in distinguishing *Mariners Savings Bank* on ground that, in that case, notice afforded to defaulting purchaser by placing of motion on short calendar was deemed sufficient because defaulting purchaser was party to that action). Here, as in *Banca Commerciale*, the plaintiff in error, a nonparty, "was entitled to assume that the proper legal procedure would be followed"; id., 28; and that an order to show cause would be issued, citing him to appear and be heard. The lack of service of the motion on the plaintiff in error was, ergo, legally insufficient to render the plaintiff in error subject to the jurisdiction of the court.

The defendant in error argues that "the central flaw" in the plaintiff in error's claim on appeal is that he did not "do anything to protect his interest in the first place." This argument fails. "One is not guilty of laches who lacks knowledge of the facts which makes action on his part of concern to him . . . nor does it lie in the mouth of the [defendant in error], which failed to take the proper steps to bring the [plaintiff in error] before the court, now to complain that the latter is guilty of laches in failing to do something which [he] was concerned to do only if [he] knew the nature of the order of the court." (Citation omitted.) *Banca Commerciale Italiana Trust Co.* v. *Westchester Artistic Works, Inc.*, supra, 109 Conn. 28–29.

On remand, it will be for the trial court, applying equitable principles, to consider whether the plaintiff in error's deposit should in fact be forfeited. See id., 29. We hold only that the plaintiff in error was entitled to notice as discussed in this opinion and an opportunity to be heard on the motion to forfeit, which this decision

leaves pending by virtue of the vacatur of the May 10, 2022 order granting the motion.

AC 46034

In this writ of error, the plaintiff in error challenges the trial court's denial of his motion to intervene as of right. In light of our granting of the writ of error in Docket No. AC 46032, we dismiss this writ of error as moot.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . . The fundamental principles underpinning the mootness doctrine are well settled. We begin with the four part test for justiciability . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by the judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . .

"[I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Internal quotation marks omitted.) *State* v. *Marsala*, 204 Conn. App. 571, 575–76, 254 A.3d 358, cert. denied, 336 Conn. 951, 251 A.3d 617 (2021).

In light of our granting of the writ of error in Docket No. AC 46032, we dismiss the writ of error in Docket No. AC 46034 as moot, as we cannot afford the plaintiff

in error any additional practical relief with respect thereto.

In Docket No. AC 46032, the writ of error is granted and the case is remanded with direction to vacate the May 10, 2022 order granting the defendant in error's motion to forfeit the deposit, to vacate the August 18, 2022 order denying the plaintiff in error's motion to vacate, and to conduct further proceedings consistent with this opinion; in Docket No. AC 46034, the writ of error is dismissed.

In this opinion the other judges concurred.