RICHARD K. FRUIN *v.* THE COLONNADE ONE AT OLD GREENWICH LIMITED PARTNERSHIP ET AL.
(15319)

Peters, C. J., and Callahan, Borden, Katz and Palmer, Js.

circumstances are distinguishable from those in the present case, in which the panel members were unanimous.

Argued March 20—officially released May 21, 1996

*Peter M. Ryan,* for the appellant (plaintiff).

*Paul L. McCullough,* for the appellees (defendants).

PETERS, C. J. This appeal requires us to decide the extent to which provisions of the Common Interest Ownership Act (CIOA), General Statutes § 47-200 et seq., limit the contractual right of a condominium developer to retain the deposit of a defaulting condominium purchaser. The plaintiff, Richard K. Fruin, filed a complaint in nine counts[1] in which he sought to recover

---

[1] The plaintiff's complaint alleged: (1) the defendants' breach of a contract to purchase a condominium unit, which breach terminated the contract and excused further performance by the plaintiff; (2) a mutual rescission of the purchase contract; (3) the nonenforceability of the purchase contract because of its noncompliance with the requirements of the statute of frauds, General Statutes § 52-550; (4) the breach of the purchase contract by the defendants because of their noncompliance with the implied covenant of good faith and fair dealing; (5) the breach of the purchase contract by the defendants because of, inter alia, their violation of eleven specified requirements of CIOA; (6) a violation by the defendants of the requirements of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., because of their violations of CIOA; (7) a conspiracy by the defendants to damage the plaintiff by violating CIOA; (8) the unjust enrichment of the defendants; and (9) violations by the defendants of CIOA because of

$25,500 that he had paid to the named defendant, The Colonnade One at Old Greenwich Limited Partnership, and others,[2] as a deposit for the purchase of a condominium unit.[3] After a trial to the court, the court rendered judgment for the defendants. The plaintiff appealed to the Appellate Court, which affirmed the judgment of the trial court. *Fruin* v. *Colonnade One at Old Greenwich Ltd. Partnership*, 38 Conn. App. 420, 662 A.2d 129 (1995). We then granted the plaintiff's petition for certification to appeal, limited to questions he had raised with regard to the effect of alleged CIOA violations on his right to rescind the purchase contract and recover his down payment.[4] We affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the facts relevant to this appeal. "In May, 1989, the plaintiff

fourteen material variances between the recorded declaration of condominium and the public offering statement for the condominium unit on which the plaintiff had made a down payment. This appeal concerns only those counts of the complaint that alleged violations of CIOA.

[2] The other defendants are Old Colonnade Limited Partnership, which is a general partner of the named defendant, Collins Colonnade Limited Partnership, which is a general partner of Old Colonnade Limited Partnership, and Arthur Collins, who is the general partner of Collins Colonnade Limited Partnership.

[3] Although the plaintiff's complaint contained a claim for damages, that claim entailed only the recovery of the $25,500 down payment that the plaintiff had made to the defendants. The parties, the trial court and the Appellate Court properly treated the demand to recover the $25,500 as a part of the demand to rescind the purchase contract. See *Barco Auto Leasing Corp.* v. *House*, 202 Conn. 106, 113, 520 A.2d 162 (1987); *Altberg* v. *Paul Kovacs Tire Shop, Inc.*, 31 Conn. App. 634, 641–42, 626 A.2d 804 (1993).

[4] We granted the plaintiff's petition for certification to appeal, limited to the following issues:

"1. Absent bad faith, does a violation of the Common Interest Ownership Act, per se, allow a unilateral rescission of a contract for the purchase of a unit in a common interest community?

"2. Is rescission in bad faith if a contract purchaser of a unit in a common interest community unilaterally refuses to perform the contract based on violations by the seller of the Common Interest Ownership Act that are not related to or have [no] nexus to the breach and the contract purchaser

contracted with the defendants to purchase a condominium unit yet to be constructed. The purchase price for the unit was $255,000. The plaintiff gave the defendants a check in the amount of $25,[500] as a down payment. The contract contained a default clause allowing the defendants to retain the down payment as liquidated damages if the plaintiff reneged on the agreement. The contract contained no contingencies and specified a closing date of August 15, 1990. The contract also provided that the defendants could extend the closing for a period not to exceed ninety days, and, if the defendants did choose to extend the closing, the defendants had to provide the plaintiff with a notice to close by a date within the extension period. If the closing was extended, the closing had to take place within ten days of the notice to the plaintiff.

"When it became apparent that the defendants would not complete construction of the unit in question by the original closing date, the plaintiff and the defendants exchanged several letters regarding a closing date. The plaintiff wrote to the defendants in June, 1990, indicating that he was 'not in a hurry to close.' In reply, the defendants indicated that the closing could be extended at least into September, 1990, and that it might be possible 'to push the closing back another couple of weeks . . . but this cannot be guaranteed at this time.'

"In the meantime, the plaintiff had enlisted the aid of the defendants' sales office in an attempt to sell the unit to a third party.[5] On August 10, 1990, the defendants wrote to the plaintiff that the closing could be delayed

has received no benefit?" *Fruin* v. *Colonnade One at Old Greenwich Ltd. Partnership*, 235 Conn. 916, 665 A.2d 607 (1995).

[5] "The trial court found 'the relevance of this attempt to resell or assign his contract of sale to the resolution of this case is that it illustrates that [the] plaintiff had, by the summer of 1990, decided that he did not wish to purchase [the unit].'" *Fruin* v. *Colonnade One at Old Greenwich Ltd. Partnership*, supra, 38 Conn. App. 422 n.2.

until October 15, 1990, but that the closing had to take place on that date whether or not a new purchaser for the plaintiff's unit was found. The plaintiff countersigned the letter and returned it to the defendants.

"On September 26, 1990, almost sixteen months after the execution of the contract to buy the condominium unit, the plaintiff wrote to the defendants requesting 'an indefinite extension' of the closing date. The stated reason was that the plaintiff was an officer in a reserve unit of the United States Army and he thought that he might be called to active duty because of the Persian Gulf crisis.[6] The defendants' attorney responded by letter stating that the defendants would agree to a postponement, but that the closing had to take place no later than January 15, 1991. The plaintiff rejected the offer by the defendants to extend the closing date to January 15, 1991, and again mentioned the possibility of being called to active military duty, and noted the inability of the defendants' sales agency to resell the unit on his behalf.

"The plaintiff failed to close on January 15, 1991, and the defendants exercised the default clause in the contract and retained the down payment of $25,[500] as liquidated damages. The plaintiff then instituted [an] action to recover the $25,[500]. . . .

"The case was tried to the court. The court concluded that the plaintiff had forfeited his deposit and that each of the nine counts in the complaint was without merit.

"In its memorandum of decision, the court found that it became impossible for the defendants to meet the

---

[6] "At trial, the plaintiff introduced as an exhibit a memorandum written by the adjutant of his reserve unit, dated August 15, 1990, to the effect that the 'unit has been placed on alert . . . for possible use in rail loadout operations. While this is not an activation, it is a good time to review your personal affairs.' " *Fruin* v. *Colonnade One at Old Greenwich Ltd. Partnership*, supra, 38 Conn. App. 423 n.3.

original closing date of August 15, 1990, due to construction delays, but that the contract provided for an extension of up to ninety days after August 15, 1990, and that the defendants offered to close on October 15, 1990, which was within this extension period. The court also found that the plaintiff initially accepted the October 15, 1990 closing date, but then asked for an indefinite extension. The court found that the defendants rejected that proposal but did offer to close on January 15, 1991, and that the plaintiff failed to close by that date. The court concluded from these facts that the plaintiff breached the contract and had no right to recover his $25,[500] down payment.

"The court also concluded from the plaintiff's testimony that the sole reason for his default was that he changed his mind about purchasing the condominium unit,[7] partially because he had been unable to sell his New York home. In reaching this conclusion, the court found that the contract had no contingencies, and that the plaintiff had the financial resources to purchase the defendants' condominium unit without selling his other home. With regard to the plaintiff's testimony that he anticipated being called to active military duty, the court

---

[7] "The trial court found: 'With respect to the contention that the defendants violated CIOA, and that the [public offering statement] and recorded Declaration of Condominium were at variance, the plaintiff testified: (i) that he had read both documents; (ii) that he was represented by an attorney . . . at the time he signed the purchase agreement; (iii) that he asked questions of his lawyer about these documents and the purchase agreement; (iv) that he was fully satisfied with the answers received from his lawyer; and (v) violations of CIOA or variations between the [public offering statement] and the Declaration, if any, played no role at all in his decision to terminate the contract. As a result, I have not analyzed each and every alleged violation of CIOA, except to note that they appear overly technical in nature, and serve no role in resolving the issue before the court, which is simply whether the plaintiff is entitled to a refund of his down payment, or whether he breached the purchase agreement and is not so entitled.' " *Fruin* v. *Colonnade One at Old Greenwich Ltd. Partnership*, supra, 38 Conn. App. 424–25 n.4.

found that if that had in fact occurred, a different result might arise under federal legislation,[8] but that because the plaintiff had not been called to active duty and had kept his civilian job, his reserve status did not affect the resolution of the case." Id., 421–25.

In affirming the judgment of the trial court, the Appellate Court reasoned that violations of CIOA may excuse a party from performance under a purchase contract executed pursuant to the act only if a nexus exists between the violations and the party's breach of the contract. Id., 428–33. Applying this analysis, the Appellate Court concluded that the plaintiff was not entitled to rescind the purchase contract and to recover his down payment because the defendants' alleged violations of CIOA bore no relationship to his own failure to comply with his contractual obligations. Id., 432–33.

On appeal to this court, the plaintiff claims that, absent bad faith on the part of a purchaser of a common interest community unit, such a purchaser may unilaterally rescind a CIOA purchase contract by reason of any violation of the act, regardless of whether the violation is in fact known to, or is relied upon by, the purchaser at the time of rescission. Specifically, the plaintiff contends that, because CIOA reflects the public policy of providing broad protection for purchasers like himself, the defendants' alleged noncompliance with provisions of the act renders his purchase contract void and gives him the right to rescind the contract. We are unpersuaded.[9]

---

[8] "See Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. § 501 et seq. (1990)." *Fruin* v. *Colonnade One at Old Greenwich Ltd. Partnership*, supra, 38 Conn. App. 425 n.5.

[9] In light of our conclusion that, under the circumstances of this case, the defendants' alleged violations of CIOA do not permit the plaintiff to rescind unilaterally the purchase contract that he had signed, we need not address the second certified issue, namely, whether rescission is in bad faith if a purchaser unilaterally refuses to perform the contract because of CIOA violations by the seller that are unrelated to or have no nexus with the purchaser's breach and the purchaser has received no benefit. See footnote 4.

Our analysis of the plaintiff's claim is guided by well established principles of statutory construction. "In determining whether CIOA affords the relief that the [plaintiff] seeks, it is axiomatic that we strive to ascertain and give effect to the apparent intent of the legislature. . . . In reaching this goal, we consider first whether the language of the statute yields a plain and unambiguous resolution. . . . Any latent ambiguity in the statutory language itself is normally resolved by turning for guidance to the legislative history and the purpose the statute is to serve. . . . In addition, we consider the statute as a whole with a view toward reconciling its parts in order to obtain a sensible and rational overall interpretation." (Citations omitted; internal quotation marks omitted.) *Nicotra Wieler Investment Management, Inc.* v. *Grower*, 207 Conn. 441, 451, 541 A.2d 1226 (1988).

CIOA is a comprehensive legislative scheme that governs the creation, organization and management of all forms of common interest communities. *Wilcox* v. *Willard Shopping Center Associates*, 208 Conn. 318, 326, 544 A.2d 1207 (1988), on appeal after remand, 23 Conn. App. 129, 579 A.2d 130 (1990); *Nicotra Wieler Investment Management, Inc.* v. *Grower*, supra, 207 Conn. 447. "[CIOA] has five major parts. Part I of the act contains general provisions, including definitions of the three forms of common interest ownership: the condominium; General Statutes § 47-202 (8); the cooperative; General Statutes § 47-202 (10); and the planned community, a residual category of developments that are not condominiums or cooperatives but nonetheless come within the scope of the act. General Statutes § 47-202 (23). Part II of the act governs the creation, alteration and termination of common interest communities. General Statutes §§ 47-220 through 47-242. Part III concerns the managerial aspects of the common interest community, including the organization and power of the unit

owners association. General Statutes §§ 47-243 through 47-261. Part IV affords protection to unit buyers through its disclosure and warranty provisions. General Statutes §§ 47-262 through 47-281." *Nicotra Wieler Investment Management, Inc.* v. *Grower*, supra, 448 n.8. CIOA expressly aspires to serve as a "general act intended as a unified coverage of its subject matter . . . ." General Statutes § 47-208.

An integral part of the detailed scheme set forth in CIOA is the inclusion of three separate provisions pursuant to which a party may rescind a purchase contract or seek redress for violations of the act. First, CIOA permits judicial rescission or modification of a purchase contract subject to the act if a court concludes that the contract was unconscionable when it was executed. General Statutes § 47-210 (a).[10] Second, CIOA permits a purchaser to cancel, unconditionally and unilaterally, a purchase contract subject to the act, if the purchaser cancels within fifteen days of executing the contract and prior to conveyance. General Statutes § 47-269 (a).[11] Third, CIOA permits any person to seek "appropriate relief," if the person is "adversely affected" by a violation of the act or by a violation of the declaration or bylaws of the common interest community. General Statutes § 47-278.[12] CIOA further provides that the reme-

[10] General Statutes § 47-210 provides in relevant part: "Unconscionable contract or clause of contract. (a) The court, on finding as a matter of law that a contract or contract clause was unconscionable at the time the contract was made, may refuse to enforce the contract, enforce the remainder of the contract without the unconscionable clause, or limit the application of any unconscionable clause in order to avoid an unconscionable result. . . ."

[11] General Statutes § 47-269 provides in relevant part: "Purchaser's right to cancel. (a) A person required to deliver a public offering statement shall provide a purchaser with a copy of the public offering statement and all amendments thereto before conveyance of the unit, and not later than the date of any contract of sale. A purchaser, before conveyance, may cancel a contract of sale within fifteen days after executing it. . . ."

[12] General Statutes § 47-278 provides: "Cause of action for violation of chapter. Punitive damages and attorney's fees. If a declarant or any other person subject to this chapter fails to comply with any of its provisions or

dies contained in the act are to be "liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed, provided consequential, special or punitive damages may not be awarded except as specifically provided in [the act] or by other rule of law." General Statutes § 47-212 (a). In addition, general principles of law and equity supplement CIOA's remedial provisions, but only to the extent that such general principles are not inconsistent "with this chapter." General Statutes § 47-207.[13] The plain and unambiguous terms of the remedial provisions, therefore, qualify and limit the extent to which supplemental principles will afford relief that CIOA does not provide specifically.

Without regard to the general principle requiring a nexus between statutory violations and a purchaser's failure to perform his or her own contractual obligations, we conclude that the specific remedial provisions of CIOA foreclose any right of the plaintiff to recover his down payment under the circumstances of this case. The plaintiff, who neither alleged unconscionability on the part of the defendants nor acted to rescind within fifteen days of the execution of his purchase contract, has no right of rescission under § 47-210 (a) or § 47-269 (a). Moreover, having failed to prove that he had been adversely affected by the defendants' alleged CIOA

any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief. Punitive damages may be awarded for a wilful failure to comply with this chapter. The court, in an appropriate case, may award reasonable attorney's fees."

[13] General Statutes § 47-207 provides: "Supplemental general principles of law applicable. The principles of law and equity, including the law of corporations and unincorporated associations, the law of real property, and the law relative to capacity to contract, principal and agent, eminent domain, estoppel, fraud, misrepresentation, duress, coercion, mistake, receivership, substantial performance, or other validating or invalidating cause supplement the provisions of this chapter, except to the extent inconsistent with this chapter."

violations, the plaintiff has no right to relief under § 47-278. Significantly, the trial court found "that violations of CIOA . . . if any, played no role at all in [the plaintiff's] decision to terminate the contract." In light of this finding, the validity of which the plaintiff does not challenge, the plaintiff could not have been "adversely affected" under § 47-278 by the defendants' alleged violations of CIOA.

The plaintiff maintains, however, that even if the specific provisions of CIOA do not afford him the relief that he seeks, he may nevertheless rescind the purchase contract and recover his down payment because CIOA, as a consumer-oriented remedial statute, should be construed, as a matter of public policy, to afford him the right to rescind so long as the defendants have violated the act and he himself has acted in good faith. We do not dispute the proposition that CIOA is a remedial statute and therefore "must be afforded a liberal construction in favor of those whom the legislature intended to benefit." *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 678, 657 A.2d 1087 (1995); *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 492, 656 A.2d 1009 (1995); see *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, 230 Conn. 148, 157–58, 645 A.2d 505 (1994). We disagree, however, that application of the principle of liberal construction permits us to interpolate into CIOA a remedy that the legislature has not provided, either explicitly or implicitly. See *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 199, 663 A.2d 1001 (1995); *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 225 Conn. 432, 442, 623 A.2d 1007 (1993); *Wilcox* v. *Willard Shopping Center Associates*, supra, 208 Conn. 327. To the contrary, we are persuaded that, read in its entirety, CIOA manifests the intent of the legislature that the remedies specifically enacted therein be the exclusive remedies for violations of the act. See *Murchison* v. *Civil Service*

*Commission*, 234 Conn. 35, 45, 660 A.2d 850 (1995); *Nicotra Wieler Investment Management, Inc.* v. *Grower*, supra, 207 Conn. 451.

Our conclusion is reinforced by the significant difference between the language of the remedial provisions of CIOA and the language of those statutes in which we have found evidence of a legislative intent to afford a broad right to rescind. For example, under the Home Improvement Act (HIA), General Statutes § 20-418 et seq., a homeowner, in the absence of proof of his or her bad faith, may unilaterally rescind a home improvement contract that fails to comply with the requirements set forth in that act. General Statutes § 20-429;[14] *Barrett Builders* v. *Miller*, 215 Conn. 316, 321–22, 328, 576 A.2d 455 (1990); see *Caulkins* v. *Petrillo*, 200 Conn. 713, 717–18, 513 A.2d 43 (1986). HIA, however, expressly voids a contract that does not comply with its require-

[14] General Statutes § 20-429 provides in relevant part: "Required contract provisions; enforceability. Negative option provisions prohibited. Owner to receive copy. Contracts considered home solicitation sales. Commissioner may dispense with certain contract requirements. Court may order recovery of payment of work performed. (a) No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. Each change in the terms and conditions of a contract shall be in writing and shall be signed by the owner and contractor, except that the commissioner may, by regulation, dispense with the necessity for complying with the requirement that each change in a home improvement contract shall be in writing and signed by the owner and contractor.

"(b) No home improvement contract shall be valid if it includes any provision obligating the owner to instruct the home improvement contractor, by a date determined by such contractor, that periodic home improvements are not to be performed unless it also includes a provision requiring the contractor to remind the owner of that obligation by means of a card or letter mailed to the owner and postmarked not earlier than twenty days, and not later than ten days, prior to such date. . . ."

ments, and, unlike each of CIOA's remedial provisions, contains no language expressly limiting the right to rescind. See General Statutes § 20-429; see also *Caulkins* v. *Petrillo*, supra, 717–18. This explicit textual difference between the remedial provisions of CIOA and of HIA supports the conclusion that the legislature did not intend to provide an unrestricted rescission right as a remedy for CIOA violations. Without a statutory warrant to do so, we cannot engraft onto CIOA the remedy that the plaintiff seeks.

Our review of the remedial provisions contained in CIOA persuades us that the Appellate Court properly concluded that the plaintiff cannot prevail on his CIOA claims. Under the circumstances of this case, CIOA provides no basis for the plaintiff's alleged entitlement to relief.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

