[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION FOR TEMPORARY INJUNCTION
This suit involves a controversy regarding the further CT Page 7148 development of a condominium complex located in Wolcott, Connecticut. The plaintiffs are Arrowhead By The Lake Association, Inc. (the "Association"), and four individual unit owners, Robert Bosco, Stuart Rothenberg, Alan Needleman and Donald Molta, each members of the Association. Bosco and Needleman also serve on the Association's executive board. The defendants are Arrowhead By the Lake, Inc. ("Arrowhead"), Muri Development Corp. ("Muri"), Fred G. Musano, Sr., and Raymond Rinaldi. This matter is before the court for a determination on the plaintiffs' application for a temporary injunction, pursuant to General Statutes § 52-471.
On August 24, 1995, the plaintiffs commenced this action by way of Writ, Summons, Verified Complaint, application for ex-parte Temporary Injunction and Order to Show Cause. In the application for the temporary injunction, the plaintiffs seek to enjoin the defendants' development of an additional 72 units on the subject property, undeveloped property on the site of Arrowhead Condominium complex, located on Spindle Hill Road, Wolcott, Connecticut. Specifically, the plaintiffs seek to prevent the defendants from conveying, selling, mortgaging or in any way encumbering any interest in the subject property. The plaintiffs also seek to enjoin the defendants from making any applications for city building permits, from entering or constructing on the property, and from exercising any rights as unit owners for any units or limited common elements alleged to have been created on the subject property.
The plaintiffs' alleged grounds for the temporary injunction are that they: (1) have no adequate remedy at law; (2) have a likelihood of success on the merits; and (3) have suffered immediate, substantial and irreparable harm and will continue to suffer such harm if the invasion of their rights in the property is not enjoined. The defendants have not filed an answer to the plaintiffs' complaint and have raised no special defenses as to the temporary injunction application. The defendants argue only that the plaintiffs have failed to meet their burden in showing the need for an issuance of a temporary injunction in that they fail to demonstrate irreparable harm and the absence of an adequate remedy at law.
At the show cause hearing commencing September 11, 1995, and lasting three days, the court heard testimony and argument regarding the plaintiffs' application for a temporary injunction. Both parties submitted post-trial briefs in support of their CT Page 7149 respective positions. On October 3, 1996, the court heard evidence regarding the appropriate amount of bond to issue if the court was to issue the injunction. On October 15, 1996, with leave of the court, the parties filed briefs addressing the issue of bond.
Based on the evidence presented, the court finds the following facts, as set forth hereinafter. The Association is a common interest community called Arrowhead By The Lake Association, Inc., organized pursuant to General Statutes §47-243[1] and created by the original declaration of Arrowhead, dated June 30, 1988, and recorded in volume 179 at page 001 of the Town of Wolcott's land records. ("original declaration"). In the original declaration, Arrowhead, the declarant of the Association, as defined by General Statutes § 47-202
(12),[2] submitted the entire parcel of property described in Exhibit A attached to the plaintiffs' verified complaint. Such property includes the previously undeveloped land in question ("subject property"), described in Exhibit C attached to the plaintiffs' verified complaint. When Arrowhead recorded the original declaration in 1988, all of the land in the condominium complex, other than the units, became the common elements of the complex. See General Statutes § 47-202 (4).[3] Arrowhead, however, reserved the right to develop part of the common land for not more than seven years after the recording of the initial declaration. Pursuant to Article VIII, §§ B and H of the original declaration, that seven year period expired on June 30, 1995.
On December 14, 1990, Musano and Rinaldi formed the defendant Muri Development Corporation ("Muri"). Musano and Rinaldi are the sole owners, officers and directors of both Arrowhead and Muri. Thereafter, the defendants, pursuant to a promotional plan, acted to dispose of Arrowhead's unsold condominiums units. Between December 14, 1990 and June 6, 1995, Arrowhead transferred all 25 of its unsold units to Muri.
On June 29, 1995, one day before Arrowhead's development rights and special declarant rights expired, Arrowhead recorded an "amended declaration."[4] Arrowhead's recording of the "amended declaration" was done without seeking unanimous consent of the Association or its members. In the "amended declaration", Arrowhead attempts to create an additional 72 home site units on the subject property, pursuant to its development rights reserved in Article VIII of the original declaration. The "amended CT Page 7150 declaration" also attempts to alter Arrowhead's rights in other respects, including extending Arrowhead's rights to complete buildings; changing the unit boundary definitions, and; reserving the right to perform construction, to complete improvements, and to have access to home units and common elements. Additionally, the "amended declaration" attempts to change unit restrictions; reduce from 100 percent to 67 percent the percentage vote of unit owners needed to change restrictions; change unit restrictions so that Arrowhead's home site units had less limitations than those of the Association, and; extend their rights to construct improvements in the complex for up to 40 years; all without seeking the unanimous consent of the Association or its unit owners.
Counts one through fifteen of the plaintiffs' amended complaint allege violations of General Statutes §§ 47-200 et seq, the Common Interest Ownership Act ("CIOA"). The remaining counts allege the following: count sixteen, violation of General Statutes § 52-552 (a), the Uniform Fraudulent Transfer Act; count seventeen, violation of General Statutes § 42-110 (b), the Connecticut Unfair Trade Practices Act ("CUTPA"); count eighteen, breach of contract; count nineteen, fraudulent misrepresentation or omission; count twenty, slander of title; count twenty-one, larceny; count twenty-two, conversion; count twenty-three, trespass, and; count twenty-four, unjust enrichment. The plaintiffs' application for temporary injunction is based only upon the defendants' alleged violations of CIOA.
"The principal purpose of a temporary injunction is to preserve the status quo until the rights of the parties can be finally determined after a hearing on the merits." (Internal quotation marks omitted.) Clinton v. Middlesex Mutual AssuranceCo., 37 Conn. App. 269, 270, 658 A.2d 814 (1995). "The status quo . . . has been defined as the last, actual, peaceable, noncontested condition which precedes the pending controversy." (Internal quotation marks omitted.) Stamford v. Kovac, 228 Conn. 95,101-102, 634 A.2d 897 (1993). "It is clear that the power of equity to grant injunctive relief may be exercised only under demanding circumstances." (Internal quotation marks omitted.)Anderson v. Latimer Point Management Corp., 208 Conn. 256, 262,545 A.2d 525 (1988). "[T]he issuance of an injunction rests in the sound discretion of the trial court." Id.
To prevail on an application for temporary injunction, the burden is on the applicant to establish (1) a reasonable degree CT Page 7151 of probability of success on the merits; (2) irreparable harm with no adequate remedy at law, and; (3) the harm likely to be suffered by the applicants is greater than that resulting from the interference occasioned by an injunction. See WaterburyTeacher Association v. Freedom of Information Commission,230 Conn. 441, 446, 645 A.2d 978 (1994); Griffin Hospital v.Commission on Hospitals Health Care, 196 Conn. 451, 457-58,493 A.2d 229 (1985). "The scope of a temporary injunction will depend on the nature of the case, the evidence presented in the hearing and the relief sought." (Internal quotation marks omitted.)Emhart Industries, Inc. v. Amalgamated Local Union 376 U.A.W.,190 Conn. 371, 407, 461 A.2d 422 (1983).
The plaintiffs' claims for injunctive relief are based on the defendants' alleged violations of CIOA. "CIOA is a comprehensive legislative scheme that governs the creation, organization and management of all forms of common interest communities." Fruin v.Colonnade One at Old Greenwich Ltd. Partnership, 237 Conn. 123,130, 676 A.2d 369 (1996). CIOA also "contemplates the voluntary participation of the owners." Wilcox v. Willard Shopping CenterAssociates, 208 Conn. 318, 326, 544 A.2d 1207 (1988), on appeal after remand 23 Conn. App. 129, 579 A.2d 130 (1990). "CIOA permits any person to seek `appropriate relief' if the person is `adversely affected' by a violation of the act or by a violation of the declaration or bylaws of the common interest community. General Statutes § 47-278." Fruin v. Colonnade One at OldGreenwich Ltd. Partnership, supra, 237 Conn. 131.
General Statutes § 47-236 (d) provides in relevant part that "no amendment may create or increase special declarant rights, increase the number of units, change the boundaries of any unit, the allocated interests of a unit, or the uses to which any unit is restricted, in the absence of unanimous consent of the unit owners." Article XV, § D of the original declaration states that no amendment to a declaration may create or increase special declarant rights, increase the number of units, change the boundaries of any unit, or the uses to which any unit is restricted, in the absence of unanimous consent of the unit owners.
As stated previously, Arrowhead's "amended declaration" attempts, inter alia, to create an additional 72 home site units on the subject property; attempts to change the unit boundary definitions, and; reserves the right to perform construction, to complete improvements, and to have access to home units and CT Page 7152 common elements. The "amended declaration" changes unit restrictions, reduces the percentage vote of unit owners needed to change certain restrictions, changes unit restrictions so that Arrowhead's home site units had less limitations than those of the Association and extends Arrowhead's rights to construct improvements in the complex for up to forty years, all, without seeking the required unanimous consent of the Association or its unit owners.
It is undisputed that the unit owners never conducted a vote to adopt the "amended declaration", and that the unit owners never consented to the recording of the "amended declaration", as required by General Statutes § 47-236 and the original declaration. Additionally, General Statutes § 47-229 (e) provides that "[i]f a declarant fails to exercise any development right within the time limit described in the declaration pursuant to [§ 47-224 (a)(8)] and in accordance with any conditions or limitations described in the declaration pursuant to [§47-224 (a)(10)] that development right shall lapse." As Arrowhead's "amended declaration" and attempted exercise of such rights fail to comply with the requirements of CIAO and those found in the original declaration, the court finds that the plaintiffs have a reasonable probability of success on their claims against the defendants.
"A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." Branch v. Occhionero, 239 Conn. 199, 207, ___ A.2d ___
(1996); Walton v. New Hartford, 223 Conn. 155, 165, 612 A.2d 1153
(1992); Berin v. Olson, 183 Conn. 337, 340, 439 A.2d 357 (1981). "Connecticut courts have long recognized that in disputes over interests in real estate, money damages may not replace a loss of that interest." Torre v. Delmonico, Superior Court, judicial district of New Haven at New Haven, Docket No. 330775 (July 30, 1992, DeMayo, J.). "Where an injury is of such a nature that it cannot be adequately compensated in damages, or cannot be measured by any pecuniary standard, it is irreparable. Whether damages are to be viewed by a court of equity as irreparable or not depends more upon the nature of the right which is injuriously affected than upon the pecuniary measure of the loss suffered." (Internal quotation marks omitted.) ConnecticutAssociation of Clinical Laboratories v. Connecticut Blue Cross,Inc., 31 Conn. Sup. 110, 113-14, 324 A.2d 288 (1973).
"If the named defendant is threatening a breach of the CT Page 7153 restrictive covenant, there can be no question that the plaintiff is entitled to an injunction restraining the breach, irrespective of whether the damage it will suffer is great or small"; (internal quotation marks omitted) Moore v. Serafin, 163 Conn. 1,11, 301 A.2d 238 (1972); "so long as such relief is not inequitable." Hartford Electric Light Co. v. Levitz, 173 Conn. 15,22, 376 A.2d 381 (1977); Manley v. Pfeiffer, 176 Conn. 540,545, 409 A.2d 1009 (1979). The evidence indicates that the defendants' actions are an unauthorized continuance of its development and special declarant rights, in violation of certain restrictive covenants contained in the original declaration. The court finds, therefore, that the defendants' actions have caused the plaintiffs to suffer irreparable harm and that money damages may not adequately compensate the plaintiffs for their harm.
As to the final element, the court, in its discretion; Waltonv. New Hartford, supra, 223 Conn. 167; finds that the harm to be suffered by the defendants resulting from the imposition of the injunction is less than would be suffered by the plaintiffs should no injunction be imposed. Id.; see also Pender v.Matranga, Superior Court, judicial district of Danbury, Docket No. 319038 (August 9, 1995, Riefberg, J.).
Accordingly, the following temporary injunction is hereby ordered by the court:
The defendants, their officers, agents, servants and employees are hereby enjoined from:
 1. Conveying, selling, mortgaging or in any way encumbering any interest in the subject property, described in Exhibit C attached to the verified complaint (the "Property"), or entering into any agreements for the sale, conveyance, mortgage or encumbrance of the Property, or any interest therein;
 2. Making any applications for permits or approvals to any governmental agency relating to the development of, alteration of, improvement of or construction upon, under or through said Property;
 3. Constructing any improvements on the Property or performing any work in preparation for the construction of improvements on the Property; and
CT Page 7154
 4. Exercising any rights as unit owners or members of the Arrowhead by the Lake Association, Inc. for any units or limited common elements alleged to have been created on the Property.
General Statutes § 52-472 provides in relevant part that "[n]o temporary injunction may be granted . . . until the party making application therefor gives bond, with surety satisfactory to the court . . . granting the injunction, to the opposite party, to answer all damages in case the plaintiff fails to prosecute the action in which the injunction is applied for to effect; provided a bond need not be required when, for good cause shown, the court . . . is of the opinion that a temporary injunction ought to issue without bond." See also SpinielloConstruction Co. v. Manchester, 189 Conn. 539, 546, 456 A.2d 1199
(1983); PDS Engineering Construction, Inc. v. Double RS,42 Conn. Sup. 460, 467, 627 A.2d 964 (1992).
The court finds that the plaintiffs have failed to show good cause for the issuance of a temporary injunction without bond, as required by General Statutes § 52-472. Therefore, this temporary injunction is conditioned upon the plaintiffs posting of a $300,000 bond within thirty (30) days of the date hereof.
Riefberg, J.