[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action has been brought by the plaintiff Caswell Cove Condominium Association on behalf of itself, the unit owners and members of the Caswell Cove Condominium. The plaintiff alleges that the defendant Milford Partners Inc., the successor declarant to Milford River Associates, the original declarant, has on September 14, 1995 wrongfully withdrawn approximately five acres of land from the southern most end of the Common Interest Community and in addition reserved unto itself an easement over lands of the condominium so as to insure ingress and egress to and from the subject property all in violation of the Common Interest Ownership Act, (CIOA), Section 47-200 et seq. of the Connecticut General Statutes. Furthermore it is alleged that the conduct of the defendant constitutes a violation of the Connecticut Unfair Trade Practices Act, (CUTPA), Section 42-110a
et. seq. of the Connecticut General Statutes.
The plaintiff is seeking to quiet title to the subject property in the unit owners and to void the easement. The defendant has in essence denied any wrongdoing and has filed CT Page 11620 several special defenses.
A motion for summary judgment has been filed by the plaintiff accompanied by a memorandum of law. The defendant has filed an objection to the motion along with it's memorandum or law in opposition to the motion.
The issue before the court is whether the defendant declarant could and did establish the right to withdraw the southernmost end of the property, as a development right and, whether they did in fact reserve that right to withdraw the property from the Condominium.
The original declaration, (Exhibit A), was filed in the City of Milford by Milford River Associates, the original declarant, on September 19, 1995 and is recorded in Volume 1675, Page 297 of the Milford land records. With this declaration, there was also recorded a survey, dated September 4, 1987, revised to July 24, 1988. (Exhibit P).
Article I of the Declaration is entitled "Subdivision or Property" and reads as follows:
"Declarant submits the property in the City of Milford, Connecticut described in Exhibit A-1 hereof, to the provisions of the Common Interest Ownership Act, Public Act 83-474 of the Connecticut General Statutes, for the purpose of creating Caswell Cove Condominiums making the improvements shown on the survey and plans as exhibits A-3 and A-4."
Condominium is defined by Section 47-202(8) of the Connecticut General Statutes as meaning, "a common interest community in which portions of the real property are designated for separate ownership and the remainder of the real property is designated for common ownership solely by the owners of those portions."
A "Common Interest Community `means real property described in a declaration with respect to which, a person by virtue of his ownership of a unit is obligated to pay for (A) real property taxes on, (B) insurance premiums on, (C) maintenance of or, (D) improvement of any other real property other than the unit described in the declaration . . . . ." Section 47-202 (7) of the Connecticut General Statutes. CT Page 11621
Our concern is with the Development Rights of the Declarant. "'Development Rights' means any right or combination of rights reserved by a declarant in the declaration to (A) add real property to a common interest community . . . or, (D) withdraw real property from a Common Interest Community." Section 47-202 (4) of the Connecticut General Statutes.
Article VIII Section 8.1 of the original declaration, (Exhibit A), is entitled "Reservation of Development Rights." the Declarant reserved the following development rights.
"(a) All lawful development rights as the same are defined in Section 3(14) of the Act. More specifically, but not by way of limitation Declarant reserves the right to add units and limited common elements in the location shown as `Declarant Rights Reserved In this Area' on the survey and plans, . . . and to add other real property to the Common Interest Community. Additionally, without by way of limitations, Declarant reserves the right to remove from the Common Interest Community a certain portion of real property being no more than two acres and located on the most northern portion of the property." This property has been commonly referred to in various documents and testimony as the "Point". It has been withdrawn without dispute from the Common Interest Community.
During the history of the condominium, there have been filed some Fourteen Amendments to the original declaration. With the first three amendments there were no surveys or certifications filed. These amendments dealt with unit designations, parking plans and allocations dealing directly with the units themselves. which might be considered the subject matter of this dispute.
It is the Fourth Amendment to the Declaration that the defendant claims effectively withdraws the subject property from the Common Interest community and that, except for the reservation of an easement, the Fourteenth Amendment is superfluous. Paragraph 9 of the Fourth Amendment states the following: "Schedule A-3 is amended by replacing it with Amended Schedule A-3 attached hereto." The Amendment also notes that "more than 66 2/3rds of the unit owners have voted to approve this amendment . . ." Schedule A-3 as amended is a survey reduced to letter size. The legend which the defendant relies upon encompasses an area which includes the subject property and contains the statement "Remaining lands of Milford River Associates." There is no information upon the survey from which CT Page 11622 one can determine a description of the property to be removed. Most important, however, is that the survey attached to the Amended Declaration, Schedule A-3, and its so called legend is illegible and can only be read if at all by some form of magnification. While the court is not concerned with the size of the survey, it is concerned with the legibility. One can hardly record a document that cannot be read and then claim it to be effective insofar as any statutory requirements being met. Section 47-228(a) of the Connecticut General Statutes requires that ". . . Each survey and plan shall be clear and legible . . ." The testimony of the defendants' expert, Mr. George Buck, was that such a copy would not be adequate.
The court finds the Fourth Amendment to be void based upon its being illegible insofar as it might be interpreted as removing any real property from the condominium.
While the Fifth through Twelfth Amendments have attached similar surveys, there was also recorded at the same time a full scale map entitled "Condominium Declaration Map" which clearly shows the subject area. The map with the Fifth Amendment carries two separate legends, one entitled "Remaining Lands of Milford River Associates", the other "Development Rights Reserved in this Area", somewhat of a contradiction.
The first reference to the legend "Remaining Lands of Milford River Associates" appears to come from an unrecorded survey which is entitled as a retracement of a map. The retracement is dated September 4, 1987 and refers to a map dated March 14, 1986. (See Exhibit Q).
The Sixth through Twelfth Amendments have similar surveys attached but also have recorded at the same time maps entitled "Condominium Declaration Map." These maps carry the legend "Development rights reserved in this area." The fact that development rights were reserved would lead one to conclude that the declarant did not think that the Fourth Amendment removed the disputed area from the condominium.
It remains for the court to determine whether the Fourteenth Amendment validly removed the subject property from the condominium and whether the easement reserved is valid. The defendant appears to be relying on the phraseology "without limitation" as securing to him a general right of withdrawal. Since that language is contained in the original declaration, CT Page 11623 then all of the real property would be subject to withdrawal and subject to the provisions of § 47-229(d) of the Connecticut General Statutes. Before any such right was exercised, a unit has been conveyed (Exhibit Z) which would prohibit any withdrawal without compliance except as to the "point" which was reserved from the very beginning.
Past history discloses that the developers were aware of the fact that the amendment had to be submitted to the condominium for approval as exhibited by the submission of the Fourth Amendment for Association approval.
The Fourteenth Amendment does not effectively remove the subject property from the Condominium Title to the subject property is quieted in the plaintiff Caswell Cove Condominium and the claimed easement is void.
The plaintiff is seeking punitive damages as well as reasonable attorney's fees under both the Common Interest Ownership Act (CIOA) as well as the Connecticut Unfair Trade Practices Act. (CUTPA).
Our Supreme Court in Frinn v. Colonnade One at Old GreenwichLtd. Partnership, 237 Conn. 123, 133, stated the following: "To the contrary, we are persuaded that, read in its entirety, CIOA manifests the intent of the legislature that the remedies specifically enacted therein be the exclusive remedies for violations of the act." (Citations omitted). Based upon this ruling, the court will consider damages only as they relate to a violation of the Common Interest Ownership Act (CIOA).
Section 47-278(a) states that: "If a declarant or any other person subject to this chapter fails to comply with any of it's provisions or any provisions of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply, has a claim for appropriate relief. Punitive damages may be awarded for a wilful failure to comply with this chapter. The court may award court costs together with reasonable attorney's fees."
Section 47-212(a) contains the following:
"The remedies provided by this chapter shall be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed CT Page 11624 provided consequential special or punitive damages may not be awarded except as specifically provided in this chapter or by other rule of law.
Thus consequential special or punitive damages may not be awarded except as specifically provided in Chapter 828 and requires that the conduct complained of must be wilful.
By wilful conduct one means that "An act or omission is wilfully done if done voluntarily and intentionally and with the specific intent to do something the law forbids or with the specific intent to fail to do something the law requires to be done, that is to say, with bad purpose either to disobey or disregard the law." Black's Law Dictionary, Fifth Edition.
The only evidence presented to the court was that Amendments One through Thirteen were prepared by the same law firm and acknowledged by an attorney from that firm. The Fourteenth Amendment was prepared by someone else duly executed and acknowledged by someone other than an attorney. The testimony of Attorney Richard Blythe was that either he or someone from his firm prepared and acknowledged the Amendments one through thirteen. He testified that a difference of opinion arose between attorney and client and that they no longer represented the defendant at that point. Thus the Fourteenth Amendment was prepared and acknowledged by someone else.
While the defendant claims that the Fourth Amendment withdraws the subject property from the condominium and that the attempted withdrawal in the Fourteenth Amendment was just surplus the testimony of Attorney Blythe was that there never was any intent to withdraw any real property from the condominium by any of the Amendments from one through twelve. The only property wherein the right to withdraw was reserved was the "Point" which was explicitly withdrawn by Amendment thirteen.
There is no evidence that the conduct of the Declarant in withdrawing the land in question was done with the specific intent to do something the law forbids or with the specific intent to fail to do something the law requires. Attorney Blythe exercising the lawyer client privilege leaves us to speculate as to what the difference between he and his client might have been. The court can not speculate as to the purpose of the defendant to either disobey or disregard the law. The plaintiff has failed to sustain his burden of proof as to CT Page 11625 punitive damages.
As to attorney's fees, Section 47-212a requires that Chapter 828 be liberally administered and to that end the court awards attorney's fees with said fees to be determined by a further hearing of the court.
Judgment may enter in accordance with the above.
The Court
CURRAN, J.