SOUTH END PLAZA ASSOCIATION, INC. *v.* CHRIS L. JOHNSON ET AL.
(AC 20403)

Landau, Pellegrino and Dupont, Js.

Argued November 1, 2000—officially released March 27, 2001

*Steven M. Olivo*, for the appellants (defendant Chris L. Johnson et al.).

*Matthew N. Perlstein*, with whom, on the brief, was *Julia Duchow Thompson*, for the appellee (plaintiff).

*Opinion*

PELLEGRINO, J. The defendants Chris L. Johnson and Corrine J. Johnson[1] appeal from a judgment of strict foreclosure of common assessment liens levied against their condominium unit by the plaintiff, South End Plaza Association, Inc. On appeal, the defendants claim that the plaintiff did not properly adopt and ratify the outstanding assessments pursuant to General Statutes § 47-245 (c)[2] and § 19.5 of the plaintiff's declaration[3] and that, therefore, the assessments are not legally enforceable. We affirm the judgment of the trial court.

---

[1] The defendant New Milford Bank and Trust Company is not involved in this appeal. We refer in this opinion to the defendants Chris L. Johnson and Corrine J. Johnson as the defendants.

[2] General Statutes § 47-245 (c) provides: "Within thirty days after adoption of any proposed budget for the common interest community, the executive board shall provide a summary of the budget to all the unit owners and shall set a date for a meeting of the unit owners to consider ratification of the budget not less than fourteen nor more than thirty days after mailing of the summary. Unless at that meeting a majority of all unit owners, or any larger vote specified in the declaration, reject the budget, the budget is ratified, whether or not a quorum is present. In the event the proposed budget is rejected, the periodic budget last ratified by the unit owners shall be continued until such time as the unit owners ratify a subsequent budget proposed by the executive board."

[3] Because § 19.5 of the plaintiff's declaration contains the same language as General Statutes § 47-245 (c), we refer to the statute only.

The following facts and procedural history are relevant to our disposition of this appeal. The plaintiff is the unit owners' association for a common interest community known as South End Plaza. The defendants, owners of a unit in the South End Plaza condominium complex, did not pay the assessments of common expenses from November, 1997, through the date of the court's judgment. The plaintiff recorded liens in the amount of the outstanding assessments and, on March 6, 1998, commenced this action seeking to foreclose those liens.[4]

In defense of the foreclosure action, the defendants claimed that the notice requirements for meetings of the unit owners to consider ratification of the budgets in 1997 and 1998 as mandated by § 47-245 (c) were not met, and, therefore, the budgets adopted at those meetings were void, and the assessments based on them were unenforceable. The plaintiff argued that regardless of the defective notice of the budget meetings in question, the saving provision of § 47-245 (c) permitted it to continue to enforce previously ratified assessments.

The court based its decision largely on the language of § 47-245 (c), which provides in relevant part that "[w]ithin thirty days after adoption of any proposed budget for the common interest community, the executive board shall provide a summary of the budget to all the unit owners and shall set a date for a meeting of the unit owners to consider ratification of the budget not less than fourteen nor more than thirty days after mailing of the summary. . . . In the event the proposed budget is rejected, the periodic budget last ratified by the unit owners shall be continued until such time as

---

[4] The parties stipulated at trial that if the court found that these liens were enforceable, the amount due for those years and the then current year would be $5308.

the unit owners ratify a subsequent budget proposed by the executive board." The court found that the plaintiff failed to provide the minimum fourteen day notice required before the scheduled budget meetings were held to ratify the 1997 and 1998 budgets. Notice of the 1997 budget meeting was mailed ten days prior to the meeting; notice of the 1998 budget meeting was mailed eleven days prior to the meeting. Both the 1997 and 1998 budgets were adopted and ratified by the owners that were present at those meetings. The court further found that the assessment levied for the year 1996, which is undisputed and which the defendants paid, was the same amount as both the 1997 and 1998 assessments. Because the 1997 and 1998 assessments were not properly ratified and because the 1996 assessment was the same as the 1997 and 1998 assessments, the court held that, pursuant to § 47-245 (c), the liens were enforceable based on the 1996 budget. Thereafter, the court found the debt to be in the amount of the claimed assessments and ordered a judgment of strict foreclosure, from which the defendants appealed.

On appeal, the defendants argue that the saving provision of § 47-245 (c) is not applicable to the present case. The defendants claim that because notice of the 1997 and 1998 budget meetings was improper, the budgets ratified at those meetings were nullities. The defendants further claim that the saving provision of § 47-245 (c) is invoked only if the budgets were rejected. Thus, the defendants assert that since the budgets were not rejected, the court improperly applied § 47-245 (c). In response, the plaintiff argues that the saving provision of § 47-245 (c) should be applied regardless of whether the budgets were rejected or invalidated. The plaintiff, therefore, urges this court to liberally construe the language of § 47-245 (c). The plaintiff argues that the defendant's strict interpretation and narrow application of the provision would lead to bizarre results. Additionally,

the plaintiff claims that the defendants have failed to demonstrate that they were prejudiced by the inadequate notice. We agree with the plaintiff.

"Statutory construction . . . presents a question of law over which our review is plenary. . . . According to our long-standing principles of statutory construction, our fundamental objective is to ascertain and give effect to the intent of the legislature. . . . In determining the intent of a statute, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *King* v. *Sultar*, 253 Conn. 429, 437–38, 754 A.2d 782 (2000); *Coelho* v. *ITT Hartford*, 251 Conn. 106, 110, 752 A.2d 1063 (1999). "Common sense must be used [when construing statutes] and courts will assume that the legislature intended to accomplish a reasonable and rational result." *Candlewood Landing Condominium Assn., Inc.* v. *New Milford*, 44 Conn. App. 107, 110, 686 A.2d 1007 (1997); see *King* v. *Board of Education*, 203 Conn. 324, 332–33, 524 A.2d 1131 (1987).

Section 47-245 is only one provision of a much larger statutory design. The Common Interest Ownership Act (act), General Statutes § 47-200 et seq., "is a comprehensive legislative scheme regulating all forms of common interest ownership that is largely modeled on the Uniform Common Interest Ownership Act." *Nicotra Wieler Investment Management, Inc.* v. *Grower*, 207 Conn. 441, 447, 541 A.2d 1226 (1988). The act "expressly aspires to serve as a 'general act intended as a unified coverage of its subject matter . . . .' General Statutes § 47-208." *Fruin* v. *Colonnade One at Greenwich Ltd. Partnership*, 237 Conn. 123, 131, 676 A.2d 369 (1996). The act "is a detailed statutory scheme governing the

creation, organization and management of common interest communities and contemplates the voluntary participation of the owners. It entails the drafting and filing of a declaration describing the location and configuration of the real property, development rights, and restrictions on its use, occupancy and alienation; General Statutes §§ 47-220, 47-224; the enactment of bylaws; General Statutes § 47-248; and the establishment of a unit owners' association; General Statutes § 47-243; and an executive board to act on its behalf. General Statutes § 47-245. It anticipates group decision-making relating to the development of a budget, the maintenance and repair of the common elements, the placement of insurance, and the provision for common expenses and common liabilities. General Statutes §§ 47-244, 47-245, 47-255, 47-249." *Wilcox* v. *Willard Shopping Center Associates*, 208 Conn. 318, 326–27, 544 A.2d 1207 (1988).

Fiscal administration under the act is a two step process. First, the executive board of a unit owners' association must adopt a budget for the upcoming year. General Statutes § 47-244 (a); see also § 25.2 of the plaintiff's declaration. Second, the unit owners must either reject or ratify the proposed budget at an annual meeting. General Statutes § 47-245 (c); see also § 19.5 of the plaintiff's declaration. Section 47-245 (c) further requires that the annual meeting be held no fewer than fourteen days and no more than thirty days after the budget is mailed to the unit owners.

There is a clear intention in the act that a unit owners' association should not operate without a budget or without the collection of common assessments in the event that the association has failed to ratify a budget. Comment 2 to § 3-103 of the Uniform Common Interest Ownership Act provides that the provisions of paragraph (c), which contains the same language as General Statutes § 47-245 (c), "permit the unit owners to disapprove any proposed budget, but a rejection of the bud-

get does not result in cessation of assessments until a budget is approved." The continuous flow of common charges from unit owners to an association is crucial to the survival of the association, the preservation of the interests of the community of owners and the day-to-day operation of the physical structures that comprise the association. Therefore, because the nonpayment of monthly assessment fees jeopardizes the continued existence of the entire condominium community and burdens unit owners who have paid their assessments, the act makes provisions for the continued fiscal support of a unit owners' association despite the failure of the unit owners to agree on a budget. General Statutes § 47-245 (c); see Uniform Common Interest Ownership Act § 3-103, comment 2.

Section 47-245 (c) provides that if "the proposed budget is rejected, the periodic budget last ratified by the unit owners shall be continued until such time as the unit owners ratify a subsequent budget proposed by the executive board." The obvious purpose of this saving provision is to permit the continuation of the last budget until a new one is duly ratified, and it makes little difference whether the failure to ratify was because the budget was rejected or was not validly approved and ratified. This interpretation that the last ratified budget should carry over if unit owners do not ratify a new budget is further supported by the language of Comment 2 to § 3-103 of the Uniform Common Interest Ownership Act, in which the drafters state that a unit owners' association may fail to ratify a budget, but "assessments continue on the basis of the last approved periodic budget until the new budget is in effect."

Therefore, because we must avoid interpreting a statute in a manner that would have it function in a difficult and possibly bizarre fashion; *Ford Motor Credit Co.* v. *B. W. Beardsley, Inc.*, 208 Conn. 13, 19, 542 A.2d 1159 (1988); we are persuaded that a liberal interpretation

of § 47-245 (c) serves to further the intention of the act. Our conclusion that the language of § 47-245 (c) should be liberally construed is further supported by the liberal policy evinced in another provision of the act. It is clear that remedies under the act are to be liberally construed so that an aggrieved party may be put in as good a position as if the other party had fully performed. General Statutes § 47-212 (a); *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 592–93, 726 A.2d 502 (1999); *Fruin* v. *Colonnade One at Greenwich Ltd. Partnership*, supra, 237 Conn. 131–32; *Grey* v. *Coastal States Holding Co.*, 22 Conn. App. 497, 504–505, 578 A.2d 1080, cert. denied, 216 Conn. 817, 580 A.2d 57 (1990).

Our conclusion that the language of § 47-245 (c) should be liberally construed is further supported by the fact that the defendants were not prejudiced by the actions of the plaintiff. Inadequate notice of the 1997 and 1998 meetings did not cause prejudice to the defendants. The assessments calculated by the 1996 budget are no different in sum from those levied pursuant to the 1997 and 1998 budgets. Pursuant to § 47-245 (c), the defendants remain liable for the unpaid assessments mandated by the 1996 budget effective through the 1997 and 1998 fiscal years. Therefore, because the dollar amounts of the assessments are the same under the 1996, 1997 and 1998 budgets, the defendants have not been prejudiced by the plaintiff's failure to give timely notice for the 1997 and 1998 budget meetings.

In light of our determination that the language of § 47-245 (c) should be liberally construed to require the application of the last ratified budget in the event that an association has failed to ratify a proposed budget, we conclude that the court correctly applied the language of § 47-245 (c) and properly determined the outstanding assessments based on the 1996 budget. We conclude, therefore, that the judgment of the court fore-

closing the plaintiff's liens was legally and logically correct and supported by the facts as they appear in the record.

The judgment is affirmed.

In this opinion the other judges concurred.